THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAVID SMITH, Defendant-Appellant.
Third District   Nos. 3—83—0109, 3—83—0375 cons.

Opinion filed March 9, 1984.

Jerry Serritella, of Peoria, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Vicki R. Wright, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The defendant, David Smith, was charged with the offenses of armed robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18—2(a)) and armed violence (Ill. Rev. Stat. 1981, ch. 38, par. 33A—2). Following a trial by jury, the defendant was found guilty as charged. The circuit court of Peoria County sentenced the defendant to a 12-year term of imprisonment in the Department of Corrections for the offense of armed robbery, dismissing the armed violence charge. In addition, the court fined the defendant and ordered him to make restitution.

On the morning of July 20, 1982, Ricky Smith, the defendant's

uncle, entered the Turf Club, a tavern in Peoria, Illinois, and remained on the premises for about 90 minutes. During that time period, the owner of the club arrived. He counted the receipts in the cash register, removing money from the register and placing part in a box near the register and the remainder in a cigarbox underneath the bar, and prepared a bank deposit, all within the view of Ricky Smith. While the owner was present, Smith made one telephone call and received one telephone call. The owner left the tavern prior to Smith's departure.

Approximately one hour after Ricky Smith left the club, a man entered the premises through the back door and said, "This is a stick up." The man was wearing a nylon stocking drawn over his face and was carrying a dark, small-caliber, automatic gun.

The man then ordered the bartender and the customers present to go to the back of the club and enter the restrooms. However, the bartender and the customers ran out the back door and telephoned the police from a nearby location. Thereafter, upon his return to the club, the owner noticed that the cigarbox containing approximately $150 in cash was missing from the bar.

Immediately following the robbery, Elmer Mohn, whose residence is located near the Turf Club, observed a man running down the street in front of his home carrying a cigarbox and bank deposit pouch. The man he saw was wearing a dark jersey with the number 72 printed on the back.

Two days later, Mohn identified the defendant in a police lineup as the person who looked like the man he had seen running with the cigarbox and deposit pouch the day of the robbery. Mohn later made an in-court identification of the defendant.

The police, in their investigation of the scene of the crime, found a notebook underneath the passenger seat of an automobile parked in the lot located to the rear of the Turf Club. The notebook contained a drawing which resembled a diagram of the Turf Club bar. Fingerprints found on the diagram did not match those of the defendant. The automobile was later identified as belonging to the defendant's fiancee, Debra Burton, now his wife.

The police also found a nylon stocking in the area near the front door of the club. A report from the State Crime Lab in Morton, Illinois, indicated that a single caucasian hair was found clinging to the stocking and that a hair sample taken from the defendant was dissimilar to the hair found on the nylon stocking.

On August 10, 1982, the defendant was charged with armed robbery and armed violence in connection with the events occurring at

the Turf Club on July 20, 1982. In addition to the previously related facts, testimony was heard at trial relative to the defendant's whereabouts on that date, certain statements made by the defendant and his prior criminal activities.

Penny Grimm, a professional psychic and western wear retailer, testified on behalf of the prosecution. She stated that she knew both the defendant and his wife, Debra Burton, and that both were living in her home at the time of the armed robbery. She also indicated a familiarity with a certain football jersey, dark in color, with the number 72 or 73 printed on the back, owned by the defendant.

Grimm further stated that during the afternoon on the day of the robbery, Burton telephoned Grimm at her place of business and, as a result of the call, Grimm returned to her home where Burton, the defendant and his mother, Barbara Long, were gathered in the dining room. A conversation then ensued among the people present. During this conversation the defendant was pacing up and down the hallway leading into the dining room.

Grimm asked the defendant if he had called the police. The defendant responded that he could not telephone the police. Grimm then asked if he had called his attorney. The defendant stated that he had telephoned his attorney, who had advised him not to talk to anyone until later.

Grimm also related two statements, one made by the defendant's mother and the other made by his wife, which caused the defendant to stomp off down the hallway. The defendant's mother stated that he could not pass a lineup and the defendant's wife responded in the affirmative when asked by Grimm whether or not the defendant had committed the robbery at the Turf Club.

Grimm further stated that later the same day, she had a telephone conversation with the defendant at her store when he called in order to speak with his wife, who was also present. Grimm testified at length to certain statements made by the defendant's wife while she was speaking to her husband on the telephone, urging him to go to the police and inform them of what he had done and indicating she would lie for him if he promised this would never happen again.

Grimm then testified that she instructed the defendant to go to the police station and talk with the police. The defendant informed Grimm that he planned to make a statement to the police. In response to her question as to what he would say, he stated, "I'm going to tell them I didn't do it." Grimm then instructed the defendant to tell the truth to which the defendant responded. "No, I can get away with it. They ain't got no witnesses."

The defendant testified on his own behalf during the trial. The morning of the day of the robbery, the defendant stated that he received a telephone call from his uncle, Ricky Smith. He then went to his mother's home. Several other witnesses, members of the defendant's family, also placed the defendant at his mother's home during that day.

He then traveled with his mother and Burton in his mother's car in search of a location for his wedding with Burton which was to be performed later that same day. Near midday, they drove to the Grimm residence where the defendant and Burton remained and, later that same afternoon, he, Burton and his mother went to the police station, where the defendant gave a statement.

In response to the testimony of Penny Grimm, the defendant stated he informed Grimm in his conversation with her at his mother's home on the day of the robbery that he could not go to the police station early in the afternoon because his attorney had instructed him to wait until later. In addition, he denied hearing any statements made either by his wife or his mother implicating him in the robbery at the Turf Club. He also testified he telephoned Grimm at her place of business that same day and informed her that he had not committed the crime at the Turf Club and that the police could not possibly have any witnesses who could identify him as the armed robber.

Barbara Long, the defendant's mother, also testified on behalf of the defense. She corroborated the testimony of her son for the day of July 20, 1982.

During the State's rebuttal, Ruby Wombacher, owner of the C.B. Haven Tavern in Peoria, Illinois, testified to an armed robbery which occurred at that location on December 21, 1980. At that time, there were several customers in the bar including Ricky Smith. Wombacher stated that while Ricky Smith was seated near her as she tended bar, a man entered the tavern, holding a gun, and stated, "This is a stick up." The man was wearing a ski mask which covered his entire face except for his eyes and was described as being about 5 feet 4 inches tall and weighing between 125 and 130 pounds.

The man then ordered everyone present to enter the restrooms. After about four minutes, Wombacher left the restroom area and discovered that approximately $8,000 and four rings were missing from the cash register and her purse.

Patricia Moon, the defendant's former wife, also testified for the State during rebuttal. She stated that on December 21, 1980, she was visiting the defendant's mother at her home when the defendant and Ricky Smith arrived and indicated that they had robbed the C.B. Ha-

ven Tavern. The defendant was carrying a ski mask when he arrived. She also stated at various times during her testimony that either $4,000 or $8,000 had been taken in the robbery. She recalled seeing jewelry in the possession of the defendant and Ricky Smith on that day, however, she admitted that in a previous statement to the police she had not recalled seeing any jewelry in their possession. In addition, Moon indicated that $500 of the stolen money was given to the defendant's mother that day.

The defendant's mother was recalled following the State's rebuttal. She described the defendant as being approximately 6 feet 1 inch tall and weighing 220 pounds in December of 1980. During her earlier testimony, she had denied her son's involvement in the armed robbery of the C.B. Haven Tavern in 1980.

At the conclusion of the trial, the jury found the defendant guilty of both armed violence and armed robbery. However, the trial court entered judgment only upon the armed robbery conviction, finding armed violence to be a lesser-included offense of armed robbery.

The defendant has asked that we review several evidentiary issues, the sufficiency of the evidence as a whole and the propriety of the sentence imposed.

■ The first issue we must address is whether the rebuttal testimony of Patricia Moon, the defendant's former wife, and Ruby Wombacher, owner of the C.B. Haven Tavern, concerning the defendant's involvement in a prior armed robbery similar in method to the subject robbery, was improperly admitted into evidence.

Moon's and Wombacher's rebuttal testimony was not in response to any competent evidence presented by the defense. Therefore, it was not true rebuttal evidence and should have been offered during the prosecution's presentation of its case in chief.

In the event it had been properly offered during the State's case in chief as demonstrating a common design or the same *modus operandi*, it would not have been admissible.

Evidence of crimes other than the one for which the accused is being tried is admissible to show motive, intent, identity, absence of mistake or *modus operandi. People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.

Prior to the admission of evidence of "other crimes," it must first be shown that a crime actually took place and that the defendant committed it. The critical question then is not identity of the two offenses but whether a comparison of the acts of both offenses as a whole demonstrates a common design and the same *modus operandi. People v. Osborn* (1977), 53 Ill. App. 3d 312, 368 N.E.2d 608.

■ The only evidence connecting the defendant with the armed robbery at the C.B. Haven Tavern is the testimony of Patricia Moon. At the time the robbery occurred in December of 1980, the defendant was not identified as the perpetrator of the crime, nor was he in any way connected with the crime. In addition, the physical description of the armed robber given by the owner of the C.B. Haven Tavern differs greatly from the uncontroverted description given by the defendant's mother during her testimony. Insufficient evidence was presented by the State to show that the defendant committed the prior armed robbery. Thus, evidence of the prior crime is not admissible to establish the same *modus operandi.*

Evidence of "other crimes," if not admissible for a purpose other than to merely establish the defendant's criminal propensities, is extremely prejudicial. The substantial prejudicial effect on the jury of the improperly admitted evidence leads us to conclude that this error is reversible and entitles the defendant to a new trial.

■ Furthermore, the defendant has claimed that he is entitled to a new trial because of the State's untimely production of certain discovery materials, among which is a report from a polygraph technician who examined Patricia Moon. The prosecution had a duty to deliver this report to the defendant along with the names of Moon and Wombacher as potential witnesses under the discovery provisions of Supreme Court Rule 412(a) (87 Ill. 2d R. 412(a)), and because the nature of Moon's and Wombacher's testimony was not rebuttal, the exception as to information relating to rebuttal witnesses is not applicable. See Ill. Rev. Stat. 1981, ch. 38, par. 114—9(c); 87 Ill. 2d R. 412(a); *People v. Hope* (1974), 22 Ill. App. 3d 721, 318 N.E.2d 128; and *People v. Manley* (1974), 19 Ill. App. 3d 365, 311 N.E.2d 593.

Because we believe the defendant is entitled to a new trial, certain additional evidentiary and sentencing errors alleged by the defendant to have occurred at the trial court level need not be discussed. However, the following issues are likely to reoccur upon retrial and, therefore, must be resolved.

■ The defendant contends that the trial court erred in refusing to hear testimony that another suspect had been arrested immediately after the crime had been committed. The suspect matched a general description of the armed robber and was stopped by the police during their initial investigation of the robbery. The suspect was taken into custody and later released when his girlfriend confirmed his explanation that he was on his way to her apartment when stopped by the police.

Although it is true that a defendant is entitled to all reasonable

opportunities to present evidence which could create a doubt as to his guilt, the evidence offered must be relevant and material in order to be admissible. It is within the trial court's discretion to refuse the admission of evidence whose relevancy is so speculative as to provide little probative value. *People v. Mikel* (1979), 73 Ill. App. 3d 21, 391 N.E.2d 550.

Evidence which indicates that someone other than the defendant committed the crime is relevant; however, such evidence is admissible only if a close connection can be demonstrated between the other person and the commission of the crime. Remote conduct not connected with the crime itself may not be shown. *People v. Nitti* (1924), 312 Ill. 73, 143 N.E. 448; *People v. King* (1978), 61 Ill. App. 3d 49, 377 N.E.2d 856.

We believe that the trial court properly exercised its discretion in refusing to allow evidence to be introduced concerning the additional suspect. Certainly, a man matching a general height and weight description of the robber, walking in the general environs of the Turf Club, has an extremely remote connection with the crime itself. Such evidence is speculative and of minimal probative value. Thus, it was properly excluded.

■ The defendant next contends that the testimony of Penny Grimm concerning certain statements made by the defendant's wife and mother in the defendant's presence and to him on the telephone was inadmissible hearsay.

It is a well-established rule that when a person is accused of a crime while in the presence of others and is silent, the tendency of a reasonable man being to deny the accusation, his silence is admissible as an implication of guilt because it gives rise to an inference of the truth of the accusation. *People v. Norman* (1963), 28 Ill. 2d 77, 190 N.E.2d 819.

Here, Grimm's testimony established that the defendant was present at the time his mother stated he could not pass a lineup and at the time his wife answered in the affirmative to Grimm's question of the defendant's guilt. Both statements clearly implicated the defendant in a robbery at the Turf Club. His failure to refute the statements infers their truth. These statements were, therefore, admissible as admissions by silence.

■ As for Grimm's testimony relating statements made by the defendant's wife while speaking to her husband on the telephone, we agree with the defendant that this testimony was clearly hearsay, not falling within any exception to the general hearsay rule, and, thus, inadmissible.

The defendant also argues that the State's evidence did not establish the defendant's guilt beyond a reasonable doubt. It is the function of the jury to weigh the testimony, judge the credibility of the witnesses and determine factual matters in debatable circumstances. (*People v. Daily* (1968), 41 Ill. 2d 116, 242 N.E.2d 170; *People v. Ross* (1981), 100 Ill. App. 3d 1093, 427 N.E.2d 868.) We have reviewed the evidence presented at trial and believe that the evidence was sufficient, if believed, to support a determination by the jury of the defendant's guilt beyond a reasonable doubt.

Accordingly, for the reasons set forth in this opinion, the judgment of the circuit court of Peoria County is reversed and the case is remanded with the direction the defendant be granted a new trial.

Reversed and remanded with directions.

ALLOY and HEIPLE, JJ., concur.