THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALTON LOGAN, Defendant-Appellant.

First District (2nd Division)   No. 1—89—1591

Opinion filed December 31, 1991.

Michael J. Pelletier and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Sharon L. Heath, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McCORMICK delivered the opinion of the court:

Defendant, Alton Logan, appeals from the circuit court's disposition of his petition for post-conviction relief.

Defendant was charged with murder, attempted murder and armed robbery in connection with the January 11, 1982, robbery of a McDonald's restaurant. One restaurant security guard, Lloyd Wyckliffe, was killed in the robbery and another, Alvin Thompson, was seriously wounded.

Defendant was tried jointly with Edgar Hope. Prior to trial, the State and counsel for Hope filed motions *in limine* to preclude defendant's counsel from eliciting evidence of a connection between Hope and Andrew and Jackie Wilson. The Wilsons have been convicted of murdering Chicago police officers William Fahey and Richard O'Brien. The killings occurred on February 9, 1982, and in a statement made at the time of his arrest, Jackie Wilson claimed that a few hours before the killings, Andrew Wilson had devised a plan to help his friend Edgar Hope escape from Cook County Hospital. Hope was being held at the hospital in connection with the murder of another Chicago police officer that occurred on February 5, 1982. See *People v. Wilson* (1985), 139 Ill. App. 3d 726, 487 N.E.2d 1015.

In response to these motions, defendant pointed out that the shotgun used in the McDonald's robbery and the service revolvers belonging to Officers Fahey and O'Brien were discovered by the police in

the beauty shop where Andrew Wilson lived and worked and that the weapons were recovered by the police when they went to the shop in an attempt to arrest the Wilsons for the murders of Fahey and O'Brien. Defendant argued that it was his theory of defense that one of the Wilson brothers, and not defendant, was involved in the robbery at the McDonald's restaurant and, therefore, he should be allowed to show the connection between Hope and the Wilsons.

The trial court granted the motions *in limine,* but ruled that defendant could ask witnesses to identify photographs of the Wilsons. The trial court later stated that if any of the witnesses could identify the Wilsons, defendant would be allowed to introduce evidence linking the murder weapon to the Wilsons.

The record indicates that defendant's counsel showed a photograph of Andrew Wilson to two of the eyewitnesses. Counsel did not ask either witness if Wilson could have been the man who shot Wyckliffe; however, one of the witnesses testified that there were a lot of similarities between defendant and the person pictured in the photograph.

Following the trial, defendant and Hope were convicted of all charges. Defendant was sentenced to life imprisonment, while Hope was sentenced to death.

Defendant appealed his conviction and sentence arguing that he was not proven guilty beyond a reasonable doubt, that the State improperly failed to complete its attempted impeachment of him, that he was prejudiced by the State's personal attack on his counsel during closing arguments, and that his sentence was excessive. This court affirmed defendant's conviction and sentence in an unpublished Rule 23 order, dated January 14, 1986. (*People v. Logan* (1986), 138 Ill. App. 3d 1162, 502 N.E.2d 874 (unpublished order under Supreme Court Rule 23).) A petition for leave to appeal was filed with the Illinois Supreme Court on February 11, 1986 (*appeal denied* (1986), 111 Ill. 2d 592).

In the meantime, Hope's conviction and sentence were automatically appealed to the Illinois Supreme Court. In an opinion dated February 21, 1986, the supreme court reversed Hope's conviction and remanded the cause for a new trial. (*People v. Hope* (1986), 116 Ill. 2d 265, 508 N.E.2d 202.) Relying on its earlier decision in *People v. Bernette* (1964), 30 Ill. 2d 359, 197 N.E.2d 436, the supreme court held in *Hope* that it was error to allow the State to introduce evidence about Wyckliffe's family during the trial.

Subsequently, defendant filed a motion to supplement his previously filed petition for leave to appeal to include the *Bernette* issue.

This motion was accompanied by an affidavit prepared by defendant's appellate counsel in which counsel stated that she had not raised the *Bernette* issue because she was not aware of the *Bernette* case, nor of the importance of the issue.

Defendant's motion was granted; however, the supreme court later denied leave to appeal. *Logan*, 111 Ill. 2d 592.

In July 1988, defendant filed a three-part petition for post-conviction relief. In his petition, defendant alleged that he was denied effective assistance during his appeal due to appellate counsel's failure to raise several meritorious issues. Part I of the petition alleged that defendant's appellate counsel was ineffective for failing to raise the *Bernette* issue; part II alleged that counsel should have raised the issue of whether the trial court erred in excluding evidence that someone other than defendant committed the offense; and part III alleged that counsel should have raised the issue of the trial court's consideration of outside information in determining defendant's sentence.

The State filed a motion to dismiss defendant's petition. Following arguments, the circuit court granted the State's motion with respect to parts II and III of defendant's petition. However, the court refused to dismiss part I of the petition, holding that defendant was entitled to an evidentiary hearing on the question of his counsel's failure to address the *Bernette* issue on appeal.

At the hearing, Donna Hickstein Foley, defendant's appellate counsel, testified that she had read the trial transcript before filing defendant's brief on appeal and that she was aware that defendant's trial counsel made objections to the evidence concerning the victims' families before the proceedings, during the trial and in a post-trial motion. Foley also testified that she did not raise the issue on appeal because she did not think it was a "strong" issue. She further testified that, while she would not dismiss an issue without doing some research on it, she was not aware of the *Bernette* decision and had not read the decision before filing her appellate brief. Foley added that if she had been aware of the *Bernette* decision, she would have raised the issue on appeal.

In denying defendant's request for post-conviction relief, the circuit court stated that Foley's selection of issues to pursue on appeal could not be deemed incompetent. The court stated that it believed Foley was aware of the "family issue" and that it did not believe her testimony that she had not heard of the *Bernette* case. The circuit court also stated that defendant was not prejudiced by counsel's failure to raise the issue because the evidence of defendant's guilt was overwhelming.

In this appeal, defendant argues that the circuit court erred in finding that he was not entitled to post-conviction relief. Defendant contends that the circuit court's finding that his appellate counsel was not ineffective in failing to raise the *Bernette* issue was clearly erroneous and inconsistent with the applicable facts and law.

The courts of this State have acknowledged that a post-conviction hearing is the proper vehicle for review of a claim that a defendant has been inadequately represented on direct appeal. *People v. Caballero* (1989), 126 Ill. 2d 248, 533 N.E.2d 1089; *People v. Frank* (1971), 48 Ill. 2d 500, 272 N.E.2d 25; *People v. Ferro* (1990), 195 Ill. App. 3d 282, 551 N.E.2d 1378; *People v. Pecka* (1989), 183 Ill. App. 3d 60, 538 N.E.2d 1189.

In *Caballero*, the Illinois Supreme Court held that the two-part standard enunciated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, was applicable in assessing the competence of counsel in a direct appeal. Thus, when a defendant maintains in a post-conviction proceeding that his attorney was ineffective in failing to argue a particular issue on appeal, he must show that the failure to raise that issue was objectively unreasonable and that there was a reasonable probability that, but for this failure, the sentence or conviction would have been reversed. (*Caballero*, 126 Ill. 2d at 270.) There is no obligation on the part of counsel to brief every conceivable issue on appeal, nor is it incompetence for counsel to refrain from raising those issues that, in his opinion, are without merit, unless counsel's appraisal of the merits is patently wrong. *People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005.

In the present case, defendant argues that the *Bernette* issue was "patently meritorious" and that the failure to raise the issue on appeal constituted ineffective assistance.

In *Bernette*, the victim's widow testified, without objection from the defendant, that she had four children, that the eldest was six years old and the youngest seven months, and that the youngest was the only child born of her marriage to the victim. During closing arguments, the prosecutor stated that the victim "had a wife, he had a child and he had a right—he was only 20 years old when he died—to be with that family and to pursue his life and liberty." *Bernette*, 30 Ill. 2d at 371.

In reversing the defendant's conviction, the supreme court held that "where testimony in a murder case respecting the fact the deceased has left a spouse and family is not elicited incidentally, but is presented in such a manner as to cause the jury to believe it is mate-

rial, its admission is highly prejudicial and constitutes reversible error unless an objection thereto is sustained and the jury instructed to disregard such evidence." (*Bernette*, 30 Ill. 2d at 371.) The court added that "jury argument by the prosecution which dwells upon the decedent's family or seeks to relate a defendant's punishment to the existence of family is inflammatory and improper." *Bernette*, 30 Ill. 2d at 371.

In ruling that defendant's appellate counsel was not ineffective in failing to argue the *Bernette* issue, the circuit court found that appellate counsel's assessment of the testimony concerning the victims' families as harmless error was correct. It was the court's view that at the time the appellate brief was filed the trend was "against this issue" and, therefore, counsel's failure to raise the issue did not prejudice defendant.

The circuit court based its ruling on the supreme court's decision in *People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59, where it was held that a comment about the victim's family made by the prosecutor during closing arguments was harmless error. However, *Bartall* involved one improper statement to which defendant failed to object. In affirming defendant's conviction, the supreme court pointed out that "[u]nlike many of the cases where comments about the victim's family required reversal, there was no presentation of irrelevant evidence about the grieving family and the prosecution did not dwell upon the victim's family so much that 'the jury could well have related this fact to the question of defendant's culpability.'" *Bartall*, 98 Ill. 2d at 323, quoting *People v. Jordan* (1983), 38 Ill. 2d 83, 92.

There is nothing in *Bartall* that indicates that the supreme court intended to abandon its earlier holding in *Bernette*, nor is there any reason to assume that appellate counsel's decision not to raise the issue was made in reliance on the supreme court's decision in *Bartall*. Moreover, in the two years preceding the filing of the appellate brief, the supreme court repeatedly cited the *Bernette* case as support for the proposition that admission of testimony concerning a victim's family is reversible error when the testimony is presented in such a manner as to cause the jury to believe that it is material. See *People v. Holman* (1984), 103 Ill. 2d 133, 469 N.E.2d 119; *People v. Yates* (1983), 98 Ill. 2d 502, 456 N.E.2d 1369; *People v. Ramirez* (1983), 98 Ill. 2d 439, 457 N.E.2d 31; *People v. Davis* (1983), 97 Ill. 2d 1, 452 N.E.2d 525; *People v. Davis* (1983), 95 Ill. 2d 1, 447 N.E.2d 353; *People v. Free* (1983), 94 Ill. 2d 378, 447 N.E.2d 218.

Although *Holman*, *Ramirez*, and the two *Davis* cases involved the admissibility of evidence concerning the victims' families at sentenc-

ing, they all suggest the continuing viability of the rule set forth in *Bernette*. The same can be said of the *Yates* and *Free* decisions, in which evidence of the victims' families was introduced during the guilt and innocence phase of the proceedings. In those cases, the supreme court reiterated the *Bernette* rule but found that the facts in those cases were distinguishable from those in *Bernette*. A review of *Yates*, *Free* and *Bernette* would have revealed the great similarity between the facts in *Bernette* and those in the present case, as well as the obvious distinctions between the present case and *Yates* and *Free*.

In *Yates*, there was testimony from the deceased victim's mother that she and the victim were the only residents of the apartment where the victim's body was found and that certain items in the apartment were missing or moved. The supreme court found that there was no impropriety in the admission of this evidence. *Yates*, 98 Ill. 2d at 530.

In *Free*, there was testimony from the deceased victim's husband that they had been married 14 years and had two children. The supreme court found that this testimony was incidental and not presented in a manner that would cause the jury to believe the testimony was material. *Free*, 94 Ill. 2d at 415.

■ The testimony in the present case went far beyond that presented in *Yates* and *Free*. Here, as in *Bernette*, the deceased victim's widow testified in response to a series of questions that she had three children, that the children were aged 10, 6, and 3, and that the eldest was not the child of the deceased. In addition, the prosecutor commented on both victims' families in opening and closing argument and a photograph showing the deceased victim with his wife and children was admitted into evidence. It also should be noted that, unlike *Bernette* where no objection was made, here, the testimony concerning the victims' families was admitted over defendant's objections.

In light of the foregoing, we find that appellate counsel's assessment of the issue as harmless error was patently wrong and that, therefore, her representation of defendant on appeal was deficient.

Thus, we now must determine whether there is a reasonable probability that, but for counsel's deficiencies, defendant's convictions would have been reversed. In *Strickland*, the Supreme Court defined a reasonable probability as one sufficient to undermine confidence in the outcome. (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) As we stated above, this standard is applicable in assessing counsel's performance on appeal. *Cabellero*, 126 Ill. 2d 270.

In *Cabellero*, the Illinois Supreme Court citing *Bernette* described comments made by the prosecutor during closing arguments as "verg-

[ing] upon the kind of detailed discussion of the deceased victim's families" which it previously had condemned." (*Caballero*, 126 Ill. 2d at 272.) However, the court found that the failure to challenge the remarks on appeal did not warrant reversal under *Strickland* because some of them were made in rebuttal to comments made by defense counsel, and because defendant had not contested the State's contention that the evidence against him, which included his own confession and admissions, was overwhelming. *Caballero*, 126 Ill. 2d at 273.

In the present case, the evidence and comments complained of were precisely the kind of detailed discussion of the deceased victim's family that has been condemned by the supreme court. And unlike *Caballero*, here, the evidence not only was uninvited, it was admitted over the strong objections of defendant. Moreover, in the present case, defendant challenged the sufficiency of the evidence against him in his original appeal and continues to do so in the present appeal.

Additionally, in defendant's original appeal, this court found that the State acted improperly during cross-examination of defendant when it attempted to impeach defendant by creating an unsupported insinuation that he had attempted to intimidate a prosecution witness. This improper questioning when combined with the improperly admitted testimony and evidence concerning the victims' families creates a strong probability that the jury's finding of guilt was based on something other than the circumstances of the crime with which defendant was charged. (See *People v. Gregory* (1961), 22 Ill. 2d 601, 177 N.E.2d 120.) The existence of this probability is further supported by the supreme court's statement in *People v. Hope*, that the overruling of defendants' objections to the evidence of the victims' families amplified its prejudicial effect because it indicated to the jury that the evidence was material. *Hope*, 116 Ill. 2d at 278.

In attempting to persuade this court that the failure of defendant's appellate counsel to challenge the introduction of the evidence concerning the victims' families did not undermine the reliability of the outcome of defendant's appeal, the State argues that a significant factor in the supreme court's decision in *Hope* was the imposition of the death penalty. The State argues that because, here, defendant was not sentenced to death, it is probable that this court would have affirmed defendant's conviction and sentence even if admission of the evidence had been challenged on appeal.

The State's argument is based on the following language from *Hope*:

"Thus, every mention of a deceased's family does not *per se* entitle the defendant to a new trial. [Citation.] In certain instances, *depending upon how this evidence is introduced,* such a statement can be harmless; this is particularly true when the death penalty is *not* imposed." (Emphasis in original.) *Hope,* 116 Ill. 2d at 276.

We find nothing in the supreme court's language that requires us to conclude that introduction of evidence of a victim's family will always constitute harmless error when the death penalty is not imposed. Rather, the court appears to be saying that when the death penalty is not imposed, the question of whether introduction of such evidence constitutes harmless error will depend upon the manner in which the evidence is introduced.

As noted above, the supreme court has ruled that the evidence in this case was not brought to the jury's attention incidentally but was presented in a manner that permitted the jury to believe it was material. (*Hope,* 116 Ill. 2d at 278.) The court also found that the comments about the victims' families made during opening and closing arguments were not invited by the defense and amounted to an improper appeal to the emotions of the jurors. Thus, the supreme court has already held that the manner in which the evidence was introduced served to prejudice the jury, and we find that the fact that the death penalty was not imposed does not require a different conclusion. See *People v. Tajra* (1965), 58 Ill. App. 2d 479, 208 N.E.2d 9.

In summary, we find that the failure of defendant's counsel to challenge the admission of evidence and arguments concerning the victims' families was objectively unreasonable and that there was a reasonable probability that, but for the failure to raise the issue, defendant's conviction and sentence would have been reversed.

Defendant also argues on appeal that the circuit court erred in dismissing part II of his post-conviction petition without an evidentiary hearing. In part II, defendant alleged that his appellate counsel was ineffective in failing to argue that the trial court committed reversible error when it refused to allow evidence linking the Wilsons to the McDonald's robbery.

Defendant correctly points out that one accused of a crime may prove any fact or circumstance tending to show that the crime was committed by someone other than himself (*People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696; *People v. Nitti* (1924), 312 Ill. 73, 143 N.E. 448), and that such evidence is relevant when a close connection can be demonstrated between the other person and the commission of the crime. (*People v. Smith* (1984), 122 Ill. App. 3d 609, 461 N.E.2d

534; *People v. Bryant* (1982), 105 Ill. App. 3d 285, 434 N.E.2d 316; *People v. King* (1978), 61 Ill. App. 3d 49, 377 N.E.2d 856.) It is also correct, as defendant points out, that evidence that a weapon was recovered in the place where an individual resided has been held sufficient to connect that individual to a crime committed with that weapon. See *People v. Bennett* (1987), 159 Ill. App. 3d 172, 511 N.E.2d 1340.

While there was evidence in the present case of a connection between Hope, the Wilsons and the McDonald's robbery, because of our disposition of the *Bernette* issue, we need not determine whether counsel's failure to challenge the exclusion of this evidence on direct appeal amounted to ineffective assistance. Similarly, we find no need to address defendant's claim that his appellate counsel was ineffective in failing to argue on direct appeal that the trial court considered improper factors in imposing sentence.

The order of the circuit court denying defendant's request for post-conviction relief is reversed, and this cause is remanded for a new trial.

Reversed and remanded.

HARTMAN and DiVITO, JJ., concur.