## Richmond

THRONE DELEON GLADDEN

v.

COMMONWEALTH OF VIRGINIA

No. 1358-89-2

Decided January 29, 1991

596

COUNSEL

David P. Baugh, for appellant.

Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLE, J.**—The appellant, Throne Deleon Gladden, was convicted of the misdemeanor offense of possession with intent to distribute less than one-half ounce of marijuana in violation of Code § 18.2-248.1. On appeal, he contends that the trial court erred in failing to sustain his motion to suppress the marijuana because of the officers' failure to knock, announce their presence and purpose, and wait a reasonable period of time for the occupants to answer the door when executing the search warrant. We agree and reverse.

When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the light most favorable to the Commonwealth and accord to it all reasonable inferences fairly deducible therefrom. *Traverso v. Common-*

*wealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). The judgment of a trial court will not be set aside unless it appears from the evidence that it is plainly wrong or without evidence to support it. Code § 8.01-680.

At approximately 10:45 p.m. on February 25, 1989, Officer John A. Venuti executed a search warrant at the defendant's home in Richmond. He, along with several other officers, approached the defendant's two story townhouse apartment carrying a "rabbit," a tool with a hydraulic pump used to open locked doors. Officer Venuti testified that the usual plan in such situations was to tap the rabbit into the crack between the door and the door jamb and then to knock on the door and announce their presence. If no one answered the knock, he would force the door open and enter. In this instance, Officer Venuti experienced some difficulty. He testified that he inserted the "rabbit" into the crack between the door and the jamb and began to tap it in. Because of the difficulty in getting it into the space, he began "hitting it rather hard . . . probably about three or four times."

At this point, the "rabbit" did not go in place and Officer Venuti had it in his hand. He then put down the "rabbit," announced "Police Officer, search warrant," and picked up a sledgehammer. Approximately fifteen to twenty seconds elapsed between the time he put down the "rabbit" and picked up the sledgehammer. At the time he picked up the sledgehammer, Officer Venuti had not heard any movement from inside and was under the assumption that nobody was at home. He then hit the metal door with the sledgehammer ten to fifteen times before bending the door around the lock enough to reinsert the "rabbit" to force the door open. Officer Venuti testified that he had been on the defendant's front stoop between a minute and one-half to two minutes when he ultimately gained entry.

At no time did Officer Venuti knock on the door with his knuckles or hand. Rather, he testified that he used the tapping on the "rabbit" in place of the knock. The record is silent whether there was a door bell. Officer Venuti testified that this knocking was "much louder" than if he had knocked on the door with his knuckles. Glenda DePriest, the defendant's girlfriend, testified that she and the defendant were at the defendant's home on the night in question. She heard several loud bangs, but never heard anyone yell, "Police." She thought someone was breaking into the

house to rob her. She and the defendant ran downstairs and she hid in the closet. She did not know that the police had entered the apartment until a uniformed officer opened the closet door.

■ The Supreme Court first announced a "no-knock entry" in the execution of a search warrant in *Johnson v. Commonwealth*, 213 Va. 102, 189 S.E.2d 678 (1972), *cert. denied*, 409 U.S. 1116 (1973). The Court acknowledged that no statute existed relating to "no-knock entries." *Id.* at 103, 189 S.E.2d at 679. Therefore, the validity of the search must be judged according to its reasonableness within the meaning of the fourth amendment to the United States Constitution and article 1, § 10 of the Constitution of Virginia. Subsequently, in *Heaton v. Commonwealth*, 215 Va. 137, 207 S.E.2d 829 (1974), the Court articulated the circumstances in which a "no-knock entry" would be considered reasonable for fourth amendment purposes:

> Generally, police officers, before resorting to forced entry into premises to be searched under warrant, must attempt to gain admittance peaceably by announcing their presence, identifying themselves as police officers and stating their purpose. Exceptions to the general rule, however, permit officers to make an unannounced entry where they have probable cause to believe that their peril would be increased if they announced their presence or that the unannounced entry is necessary to prevent persons within from escaping or destroying evidence. Unless an exception can be established by the prosecution, evidence seized after a "no-knock" entry is excluded under the Fourth Amendment.

*Id.* at 138, 207 S.E.2d at 830 (citations omitted).

■ The announcement doctrine, therefore, requires that the police, prior to forcing entry into a dwelling: (1) knock; (2) identify themselves as police officers; (3) indicate the reason for their presence; and (4) wait a reasonable period of time for the occupants to answer the door. *See Ker v. California*, 374 U.S. 23, 39-40 (1963); *Miller v. United States*, 357 U.S. 301, 309 (1958).

In the case before us, the prosecution did not attempt to prove the existence of exigent circumstances. The prosecution made no attempt to prove probable cause to believe that the peril to the officers would be increased if they announced their presence or

that a "no-knock" entry was needed to prevent people from escaping or destroying evidence. *See Heaton*, 215 Va. at 138, 207 S.E.2d at 830. The officers were, therefore, required to comply with the general rule announced in *Heaton* to gain admittance peacefully by announcing their presence, identifying themselves as police officers and stating their purpose.

In *Grover v. Commonwealth*, 11 Va. App. 143, 396 S.E.2d 863 (1990), the officer slipped a passkey into the lock located on the outside of the defendant's hotel room door. While inserting the key, the officer heard movement on the inside of the door. He held the key in his left hand, knocked three or four times with his right hand, and identified himself as a police officer with a search warrant. The officer waited five to six seconds and turned the key in the lock to gain entry. This Court held that insertion of the key alone was not an "entry." Rather, the officer's actions were "merely preparatory, enabling him, if necessary, to act quickly once he had knocked and announced his identity and purpose." *Id.* at 146, 396 S.E.2d at 865. We held in *Grover* that the correct analysis of the "no-knock" cases should focus on the reasonableness of the method of entry and not with resort to the law of "breaking" as used in the burglary context. *Grover*, 11 Va. App. at 147, 396 S.E.2d at 865.

Here, we are not required to determine whether the insertion of the "rabbit" into the crack in the door constituted a fourth amendment violation. The Commonwealth argues that the tapping and hammering on the "rabbit" was sufficient to constitute the announcement of the officers' presence prior to the forced entry. This claim is without merit. The officer did not ring the doorbell and the record does not disclose whether there was one at the home. Further, he did not knock on the door with his knuckles, hand or fist. The ringing of a doorbell and the knocking of a door knocker, if available, and the knocking on the door with the hand or fist are universally recognized signals to the occupants of a dwelling that someone is at the door wishing to gain entrance. The Commonwealth contends that the tapping on the "rabbit" followed by three or four bangs on it from a hammer caused a noise much louder than if the officer simply knocked on the door with his knuckles. The question is not the amount of noise created by the officer, but rather what the noise communicates to the occupants within. The striking of two pieces of metal together on the

front porch does not carry with it the recognition factor that the ringing of the doorbell or the knocking on the door would have. The Supreme Court in *Johnson* said:

> The reasons for the requirement of notice of purpose and authority have been said to be that the law abhors unnecessary breaking or destruction of any house, because the dweller in the house would not know the purpose of the person breaking in, unless he were notified, and would have a right to resist seeming aggression on his private property.

213 Va. at 104, 189 S.E.2d at 679.

Glenda DePriest testified that she believed a robber was attempting to gain entry. The tapping of the "rabbit" did not give notice to the occupants of the apartment that there were individuals at the door seeking peaceable entry, thus inviting the occupants to respond to the door. On the contrary, the tapping and hammering reasonably caused DePriest to hide in the closet.

We hold that it is reasonable to require the police to announce their presence and request peaceful entry by ringing the doorbell or using the door knocker, if they are available, or by knocking on the door with the knuckles, hand or fist, the usually recognizable signals to gain peaceful entry. Since that was not done in this case, the entry was unreasonable and a violation of the fourth amendment; any evidence seized as a result of this entry was "the fruit of the poisonous tree" and should have been suppressed. *Heaton*, 215 Va. at 139, 207 S.E.2d at 830.

The Commonwealth has failed to justify the "no-knock" entry. Therefore, the judgment of conviction is reversed and the case is remanded to the trial court for further proceedings if the Commonwealth be so advised.

*Reversed and remanded.*

Koontz, C.J., and Benton, J., concurred.