ELIOT JEFFREY MEYERS

v.

COMMONWEALTH OF VIRGINIA

No. 0104-89-4

Decided April 30, 1991

COUNSEL

Marvin D. Miller, for appellant.

Robert B. Condon, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**MOON, J.**—We affirm the conviction of Eliot Jeffrey Meyers for distribution of cocaine, possession of cocaine with the intent to distribute, and possession of marijuana with the intent to distribute. We hold (1) that the police did not violate the "knock and announce" requirement when executing the search warrant at Meyers' home, and (2) that the evidence does not support Meyers' claim that the distribution of cocaine and possession of cocaine with the intent to distribute were the same criminal act and, thus, he should only be required to serve one sentence.

An undercover DEA agent, Judith Young, with the aid of a confidential informant, arranged for the purchase of three ounces of cocaine from Meyers at a cost of $1500 per ounce. Agent Young, accompanied by the informant, went to Meyers' home to make the purchase. Agent Young suggested that she pay cash for one of the three ounces and, if the cocaine proved to be satisfactory, she would return in a couple of hours for the other two ounces. The parties agreed and Agent Young left with her one ounce purchase packaged in a plastic bag. Meyers retained in two separate plastic bags the balance of the cocaine that he agreed to sell her. Agent Young then obtained a search warrant and re-

turned with members of the Fairfax County Police Department who "secreted themselves around the corner of the house." When Agent Young rang the doorbell she was recognized by Mr. Vlastaris, a visitor of Mr. Meyers, as having been there earlier. Upon Mr. Vlastaris' opening the door, Young held out her badge and yelled, "Police Search Warrant." A "few seconds later," Young stood aside and held the storm door while the police went in. Upon a search of the premises, officers found the $1500 cash paid by Agent Young for the one ounce of cocaine, two plastic bags each containing approximately an ounce of cocaine, a "pharmaceutically folded paper" containing about one gram of cocaine, one plastic film canister containing chunky material which proved to be cocaine, several items of drug paraphernalia with cocaine residue and about eleven pounds of marijuana.

## I.

Meyers maintains that he may not be required to serve a sentence for both cocaine distribution and possession of cocaine with the intent to distribute because there was only one criminal act but for the police action which separated the act into two crimes. In support of his position he cites *United States v. Palafox*, 764 F.2d 558 (9th Cir. 1985), which held "that where the defendant distributes a sample and retains the remainder for the purpose of making an immediate distribution to the same recipient at the same place and at the same time, verdicts of guilty may be returned on both counts but that the defendant may be punished for only one." *Id*. at 560.

We disagree with the Commonwealth that defendant did not adequately preserve his right to rely upon *Palafox*, assuming without deciding that *Palafox* accurately describes Virginia law. At the sentencing stage, counsel maintained that the court should not order defendant to serve two sentences where a single act of distribution formed the basis of both the charge of distribution and the charge of possession with intent to distribute.

However, we hold that the facts in this case are distinguishable from those in *Palafox* because, in the case before us, there was more cocaine found on the return visit than was necessary to consummate the original transaction with DEA Agent Young. In addition to the one ounce purchase, made by Agent Young prior to the arrest, quantities of cocaine seized pursuant to the search war-

rant were submitted for analysis in the amounts of 80.18 grams, .69 grams and .11 grams, respectively. The amount seized pursuant to the search warrant totals a little less than three ounces. This amount added to the one ounce sale made to Agent Young prior to the arrest indicates that the charges against Meyers stem from his original possession of nearly four ounces of cocaine. The deal Meyers arranged with Agent Young was for three ounces. Had this deal been consummated, Meyers would have been left with nearly one additional ounce of cocaine.

The police found two one-ounce bags of cocaine packaged and stored inside the drawer of Meyers' desk together with the sum of $1,500. The jury could have believed that this represented the balance of the cocaine Meyers was saving for Agent Young and the money she paid for the ounce of cocaine she purchased earlier that evening. In addition, however, the police found atop the desk "pharmaceutically folded paper" containing one gram of cocaine, a canister with a solid chunk of cocaine, a tray holding a chunk of cocaine and paraphernalia for pulverizing, weighing, and packaging cocaine. There is no evidence that the cocaine atop the desk was part of the cocaine that Agent Young contracted to purchase.

■ Meyers contends that the one additional ounce of cocaine seized was merely for his personal use. However, a rational trier of fact could have found beyond a reasonable doubt that Meyers possessed that amount of cocaine for the purposes of distribution. Not only was there evidence of the value of that amount of cocaine but the police also seized drug paraphernalia, including scales and a drug cutting agent for the processing and distribution of cocaine. Additionally, the Commonwealth presented evidence that Meyers was a drug dealer. Even a small amount of the drug may be sufficient to support a finding of possession with the intent to distribute when other evidence and circumstances prove the possession is with the intent to distribute. *Hambury v. Commonwealth*, 3 Va. App. 435, 438, 350 S.E.2d 524, 525 (1986).

■ The *Palafox* doctrine is narrow in its application. *See United States v. Monzon*, 869 F.2d 338, 347 (7th Cir.), *cert. denied*, 490 U.S. 1075 (1989) (multiple sentences properly imposed where different purities, participants or times of transaction are involved). We conclude that it has no application to circumstances, such as here, where the quantity of drugs remaining in the possession of the seller is greater than the amount involved in

the agreed transaction and the evidence establishes that the excess amount is possessed with the intent to distribute.

### III.

We next consider Meyers' argument that the police failed to comply with the "knock and announce" search requirement. The facts here are also distinguishable from the authorities he relies upon. On this issue we must construe the evidence in the light most favorable to the Commonwealth. Meyers relies heavily on the case of *State v. Ellis*, 21 Wash. App. 123, 584 P.2d 428 (1978), to support his contention that the use of a ruse by plainclothes detectives with a nearly simultaneous entry is unlawful. In *Ellis*, plain clothed detectives, as was Young in this case, used a ruse (a false name), to gain or obtain the opening of the door. However, the defendant upon opening the door and seeing that it was not "Louie" as announced, attempted to close the door. The court in *Ellis* placed emphasis on the trial court's finding "[t]hat simultaneously with the announcement of the officer's true identity and purpose, the door to the residence appeared to be swinging closed, whereupon [the] Detective . . . placed his hand upon said door, the door was forced." *Ellis*, 21 Wash. App. at ____, 584 P.2d at 431 (emphasis added).

Here, when Agent Young appeared, the door was opened for her. After the door was opened, she announced that she was a police officer with a search warrant. The individual at the door made no attempt to close it and several seconds passed before the police entered.

We believe this case is analogous to *United States v. Syler*, 430 F.2d 68 (7th Cir. 1970). In *Syler*, the federal agent was seeking to execute a search warrant for counterfeit money. The Court noted that the easily destructible nature of the evidence justified the entry under the following circumstances:

> The facts conceded by the defendant show that the front door was already open. Apparently responding to the announcement of the arrival of the "Gas man," the defendant unlatched the screen door and partly opened it. [The] [o]fficer . . . merely completed the operation voluntarily initiated by defendant. No attempt was made to bar his way and no force was applied in gaining entry.

*Id.* at 70.

We hold under the facts and circumstances of this case that the police did not violate the "knock and announce" requirement.

Accordingly, the judgments appealed from are affirmed.

*Affirmed.*

Barrow, J., and Benton, J., concurred.