## Richmond

COMMONWEALTH OF VIRGINIA

v.

WILLIAM ALEXANDER VIAR and FAITH YVONNE VIAR

No. 1629-92-2

Decided December 21, 1992

## COUNSEL

Kathleen B. Martin, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellant.

No brief or argument for appellees.

## OPINION

**FITZPATRICK, J.**—The appellees, William and Faith Viar, were indicted for possession of more than one-half ounce but less than five pounds of marijuana with intent to distribute. Code § 18.2-248.1(a)(2). The appellees filed a motion to suppress the physical evidence seized from their home on the ground that the police failed to comply with the "knock and announce" rule prior to executing a valid search warrant. The trial court granted the motion to suppress and the Commonwealth appeals that ruling pursuant to Code § 19.2-398(2).[1] On appeal, the Commonwealth argues that because the police initially obtained consent to enter the appellees' residence that the "knock and announce" rule did not apply, and that the trial court erred in suppressing the evidence. We agree with the Commonwealth and reverse the trial court's ruling on this matter.

## BACKGROUND

On October 10, 1991, at about 8:10 p.m., Detective Fields of the Charlottesville Police Department went to the appellees' residence in

---

[1] Code § 19.2-398 provides, in pertinent part, that:
A petition for appeal from a circuit court may be taken by the Commonwealth only in felony cases . . . from . . . (2) [a]n order of a circuit court prohibiting the use of certain evidence at trial on the grounds such evidence was obtained in violation of the provisions of the Fourth, Fifth or Sixth Amendments to the Constitution of the United States or Article I, Sections 8, 10 or 11 of the Constitution of Virginia . . . .

an attempt to make an undercover purchase of marijuana and to execute a search warrant. Upon arrival, Detective Fields knocked several times on the door of the appellees' residence. He heard several small children inside the trailer saying "come in," but he made no attempt to enter until he heard a female voice say "come in." Detective Fields could not recall whether he or the appellees' children opened the door, but the door opened. From the threshold he saw the appellee, Faith Viar, seated in a chair approximately twenty feet from the doorway.

Detective Fields spoke with Faith Viar from the doorway. He was in plainclothes and he did not identify himself as a police officer. He told Faith Viar that he wanted to purchase some marijuana.[2] She refused to make the sale, saying that she did not know him and that her husband was not at home. Detective Fields testified that Faith Viar suggested that he return later when her husband would be home. At the suppression hearing, Faith Viar denied that she told Detective Fields to return later. The conversation between Detective Fields and Faith Viar lasted one to three minutes.

Acting according to a pre-arranged plan, Detective Fields motioned from the doorway to the other police officers who were waiting outside. Regarding his entry into the trailer, Fields testified that he "stepped inside, announced that [he] was a police officer, produced [his] badge, [and] stated [they] had a search warrant for the residence." Faith Viar remained seated in her chair. The other officers entered within thirty to forty-five seconds after Detective Fields stepped inside. Thereafter, Faith Viar was given the search warrant and advised of her *Miranda* rights.

At the suppression hearing, Faith Viar described the entry of Detective Fields as follows:

---

[2] Detective Fields testified about the initial conversation between Faith Viar and himself as follows:

What I told her was I was from Southwest Virginia, I was here hunting, I had been at the Riverside, was inquiring to where or how I could come about some marijuana, I was told to come up here to this residence. When I told her that I wanted to buy a hundred dollars worth of marijuana, she stated that she did not know me and to come back because her husband would be back in a few minutes. . . . I might have asked her again, stating that I just wanted to buy a hundred dollars and it might have been some small conversation as far as she didn't know me again, wait for her husband to come back. At that point I stepped inside, announced that I was a police officer, produced my badge, stated that we had a search warrant for the residence.

[H]e knocked once on the door. I asked him who it is, no response, no answer, no name, nothing. He knocked again. I said who is it, still no response, nothing. He knocked a third time. I said who is it, and my kids spoke up and said come in.

Further, she testified that her children were seated on the sofa and that Detective Fields was the one who actually opened the door to the trailer. She conceded, however, that the statement ''come in'' was made before she saw Detective Fields and *before* the door was opened.

The trial court in its opinion letter noted that there was some conflict in the testimony between Detective Fields and Faith Viar as to the method of entry. The trial court continued:

However, considering the testimony of Officer Fields, he acknowledges that after his conversation about his desire to purchase marijuana, he stepped inside the trailer without invitation to come in at that point and told Mrs. Viar that he was a police officer with a search warrant.

Without making any factual findings regarding the conflicting testimony, the trial court sustained the motion to suppress on the ground that Detective Fields stepped inside the residence before announcing his identity and purpose.

While searching the residence the officers found marijuana in the appellees' bedroom. William Viar returned to the residence a short time later, and both appellees were charged with possession of marijuana with intent to distribute.

## METHOD OF ENTRY TO EXECUTE SEARCH WARRANT

There is no dispute that the police used a ruse to make initial contact with the appellee by having an undercover police officer pose as a drug buyer. The purpose for the ruse was two-fold: the police sought to obtain direct evidence of distribution of marijuana by the appellees and to obtain peaceful entry into the home for the purpose of executing a valid search warrant. The Commonwealth does not argue that any ''exigent circumstances'' apply in this case that might satisfy one of the recognized exceptions to the ''knock and announce'' doctrine. Rather, the Commonwealth argues that the doctrine does not apply in this case. We agree.

It is well settled in Virginia that police officers armed with a search warrant may not forcibly break into dwellings as a matter of

course to execute a warrant. "Generally, police officers, before resorting to *forced entry* into premises to be searched under warrant, must attempt to gain admittance peaceably by announcing their presence, identifying themselves as police officers and stating their purpose." *Heaton v. Commonwealth*, 215 Va. 137, 138, 207 S.E.2d 829, 830 (1974) (emphasis added). There are, however, recognized exceptions to these requirements under certain exigent circumstances.

The Virginia Supreme Court in *Johnson v. Commonwealth*, 213 Va. 102, 189 S.E.2d 678 (1972), *cert. denied*, 409 U.S. 1116 (1973), acknowledged that the Code of Virginia is silent on the formalities of the execution of search warrants, and explained the purpose of the "knock and announce" doctrine as follows:

> The reasons for the requirement of notice of purpose and authority have been said to be that the law abhors unnecessary breaking or destruction of any house, because the dweller in the house would not know the purpose of the person breaking in, unless he were notified, and would have a right to resist seeming aggression on his private property.

*Id.* at 104, 189 S.E.2d at 679.

The validity of a search where the police fail to announce their presence and request peaceful entry prior to a forcible entry is "judged in terms of its reasonableness within the meaning of the fourth amendment to the United States Constitution and Article I, § 10 of the Constitution of Virginia." *Grover v. Commonwealth*, 11 Va. App. 143, 145, 396 S.E.2d 863, 864 (1990). Thus, Virginia has no absolute rule requiring a police officer to "knock and announce" in every situation when a search warrant is being executed. *Id.*

Upon hearing a motion to suppress, the trial judge must first determine whether the "knock and announce" doctrine applies. The threshold issue for such a determination is the method of entry used by the police. The "knock and announce" doctrine does not apply when law enforcement personnel have gained entry into a dwelling by consent, because no force is used under such circumstances. It is irrelevant that the police gained entry by ruse or stratagem, as long as the consent to enter was not revoked prior to the police identifying themselves. As one commentator explained:

> When the false friend or undercover agent knocks at the door of a suspect's house, is recognized and admitted, breaches of the

peace at the threshold have been avoided, and the entry was "reasonable." After the police are inside and their purpose has been announced, the chances of violence are about the same in either case, so the major problem is in avoiding violence brought on by attempted forcible entry. When that purpose has been achieved and the police are inside with a lawful warrant, the police must be free to proceed with execution of the law.

John L. Costello, *Virginia Criminal Law & Procedure* § 37.8 (1992 Supp.) (citing *Meyers v. Commonwealth*, 12 Va. App. 398, 404 S.E.2d 83 (1991)).

In the case at bar, Detective Fields knocked on the appellees' door and an occupant, either Faith Viar or one of her children, responded to the knock with an invitation to "come in." Assuming *arguendo* that Detective Fields was the person who opened the door, such conduct was permissible in light of the invitation to "come in." Thereafter, Detective Fields conversed with Faith Viar from the doorway. However, contrary to the trial court's conclusion, no evidence suggests that she ever revoked the invitation to be on her premises before Detective Fields identified himself as a police officer and announced his purpose. The trial court erroneously focused on the fact that the officer stepped inside the doorway before producing his badge and stating his purpose. The sequence of events, however, was not determinative of the issue in this case, because the actual entry into the residence remained consensual despite the acknowledged ruse by the police.

The facts of this case are analogous to those in *Meyers*. In *Meyers*, a government agent posing as a drug purchaser returned to the defendant's house to complete a cocaine transaction. When she rang the doorbell, a visitor recognized her as having been there earlier and opened the door. The agent then produced her badge and announced that she had a search warrant. The occupants made no attempt to close the door or restrict the agent's entry. Relying on *United States v. Syler*, 430 F.2d 68 (7th Cir. 1970), we held that the police had not violated the "knock and announce" rule. *Meyers*, 12 Va. App. at 402-03, 404 S.E.2d at 86; *accord Commonwealth v. Sepulveda*, 406 Mass. 180, 183, 546 N.E.2d 879, 881 (1989) (defendant responded to undercover officer's knock by opening the door wide enough for entry, and after taking two steps inside, the officer announced his identity and other officers followed him into apartment. The Court held that since no forcible entry was involved, the officers were not required to comply with the "knock and announce" rule).

The cases cited by the trial court in its ruling, *Heaton* and *Gladden v. Commonwealth*, 11 Va. App. 595, 400 S.E.2d 791 (1991), are distinguishable from the case at bar because they involved forcible entry. In *Heaton*, police officers entered the defendants' premises without warning by kicking in a door panel and then announcing that they had a search warrant. 215 Va. at 128, 207 S.E.2d at 830. In *Gladden*, police officers, executing a search warrant at night on the defendant's residence, relied on the "tapping" noise made by a hydraulic tool and a sledgehammer to alert the occupants. 11 Va. App. at 597, 400 S.E.2d at 792. Police conduct was found to be unreasonable in both those cases.

In contrast, the police in this case had consent to enter and used no force to gain peaceful entry. Therefore, the "knock and announce" doctrine was not applicable and the trial court's ruling to the contrary was clearly erroneous and must be reversed.

*Reversed.*

Moon, J., and Elder, J., concurred.