## CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia

v.

Kendall Woodson

September 5, 1996

Case Nos. F-96-1164 & F-96-1165

BY JUDGE DONALD W. LEMONS

This matter is before the Court on defendant's Motion to Suppress evidence consisting of cocaine and a rifle obtained in the search of the premises at 1406-A Jennie Scher Road pursuant to a validly issued search warrant. The defendant, Kendall Woodson does not attack the validity of the warrant itself; rather, he maintains that the failure of the police to knock and announce their presence before executing the warrant and entering the premises violates his rights under the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Virginia Constitution. For the reasons stated below Woodson's Motion to Suppress is denied.

On January 10, 1996, officers of the Richmond City Police Department executed a search warrant at 1406-A Jenny Scher Road in the Woodcroft Village Apartments. It is undisputed that the officers obtained a key to the apartment unit from the property manager and they entered the premises without knocking or announcing their presence. Upon entry and search of the premises, the officers found cocaine between the mattress and the box springs in one bedroom, cocaine in the pocket of a coat hanging on a door, cocaine in a shoe under the bed, and a rifle propped against the wall in the corner of the bedroom. Woodson was in the apartment at the time and was charged with possession of cocaine with intent to distribute and possession of a firearm while simultaneously possessing a Schedule II controlled substance. The police also found additional cocaine at the feet of the defendant in the transportation van upon arrival at police headquarters.

The total amount of cocaine seized was 42.5 grams. Woodson denied knowledge of the presence of drugs and denied ownership of the drugs, the coat, and the rifle.

Woodson claims that he was living at the apartment at the invitation of his sister, Coralease Woodson, who was the lessee of the premises. He admits that he was not a lessee under the lease and that he did not pay rent to anyone. He admits that the apartment was subsidized housing and that he was not authorized to live there. Woodson acknowledges that he was living there "illegally."

Ms. Donna Pritt, the property manager for Woodcroft Village Apartments testified that the only persons authorized to live at 1406-A Jenny Scher Road were Coralease Woodson and her daughter. She was required to certify to the United States government on a yearly basis who resided at that residence. Not only was Mr. Woodson not authorized to live in this subsidized housing, Ms. Pritt testified that he had been "banned" from the property. Prior to the arrest she had sent Mr. Woodson a certified letter barring him from the property. She received the return receipt for the letter signed by Mr. Woodson.

Additionally, Ms. Pritt conducted monthly inspections of the premises. In January 1996 her inspection revealed "scanners in each room of the apartment" and a "barrel of a gun sticking from under the bed" in the apartment. She reported her observations to Officer Burnett of the Richmond City Police Department.

Mr. Robert Hershey, maintenance superintendent for Woodcroft Village Apartments, testified that he went into the apartment at 1406-A Jenny Scher Road in early January 1996 for routine maintenance work. He observed live ammunition in the apartment as well as "a couple of gun butts from under the bed and a rifle in the corner." He reported his observations to Officer Burnett.

Officer Burnett testified that he had been informed of the presence of guns, ammunition, and police scanners in the apartment from Ms. Pritt and Mr. Hershey. Additionally, Officer Burnett had personal knowledge of Woodson's prior arrest for possession of a concealed weapon and possession of a stolen handgun. During the arrest, an additional "automatic handgun" was found in the trunk of the car in which Woodson was a passenger. Officer Burnett was personally familiar with Woodson's prior arrest for assaulting a police officer and one prior cocaine possession charge. Additionally, Officer Burnett, at the request of the property manager, had informed Woodson that he was not allowed to be on the property. Officer

Burnett was aware of Woodson's conviction in the General District Court for the City of Richmond for trespassing at that apartment. The conviction was introduced as Commonwealth's Exhibit 4.

Based upon information from a confidential informant who told them about witnessing Woodson sell cocaine in the apartment on numerous occasions in the two months prior to the affidavit, police obtained a search warrant for the premises at 1406-A Jenny Scher Road. On January 10, 1996, Woodson was observed entering the apartment wearing the coat in which the officers subsequently found cocaine. The officers observed numerous people entering and leaving the apartment prior to the execution of the search warrant. The officers were using a radio frequency for communications which was capable of being intercepted by commercially available police scanners. The officers believed that the apartment was equipped with such scanners. They obtained the key to the apartment from the property manager and gained entry without knocking or announcing their presence.

Woodson claims that the execution of the search warrant was improper because the officers did not "knock and announce" their presence before execution of the warrant. The general rule has been often stated:

> It is well settled in Virginia that police officers armed with a search warrant may not forcibly break into dwellings as a matter of course to execute a warrant. Generally, police officers, before resorting to forced entry into premises to be searched under warrant, must attempt to gain admittance peaceably by announcing their presence, identifying themselves as police officers and stating their purpose.

*Wynne v. Commonwealth*, 15 Va. App. 763, 765 (1993); see also *Hargrove v. Commonwealth*, 21 Va. App. 320 (1995); *Commonwealth v. Viar*, 15 Va. App. 490 (1992); *Grover v. Commonwealth*, 11 Va. App. 143 (1990).

But courts have recognized exceptions to this rule where certain exigent circumstances such as destruction of evidence, escape of criminal actors, or significant danger to third parties including police officers are present. In the case of *United States v. Bates*, 84 F.3d 790 (6th Cir. 1996), the court was required to examine a "no knock" search and the exigent circumstances which may have justified it. Admittedly, the federal statute involved has no applicability to state court proceedings; however, the court's constitutional analysis is instructive to the facts of this case. In *Bates* police officers obtained a search warrant based upon a confidential infor-

mant who told police that a multiple kilo shipment of cocaine would soon be delivered to Bates at an apartment where guns were present and the front door was barricaded. The officers decided to execute the search warrant by banging on the front door to create a diversion while other officers scaled ladders to the second floor balcony to obtain entrance. The evidence in the case included the observation by a police officer that it was highly unlikely that anyone could have disposed of fifteen kilograms of cocaine in the time it would have taken the officers to enter the apartment after knocking and announcing their presence. There were no facts indicating that the defendants were violent or would use a weapon when confronted with police. No other exigent circumstances were alleged justifying the "no knock" search. The court declared the search to be improper and suppressed the evidence seized and made the following observation:

> It is argued by the government that because the Defendants were alleged to be in possession of a handgun, were likely to destroy the cocaine and had barricaded the front door, exigent circumstances were present and excused the need to knock and announce their presence. The presence of a weapon creates an exigent circumstance, provided the government is able to prove they possessed information that the suspect was armed and likely to use a weapon or become violent. Evidence that firearms are within a residence, by itself, is not sufficient to create an exigency to officers when executing a warrant. However threats to an officer's safety, a criminal record reflecting violent tendencies, or a verified reputation of a suspect's violent nature can be enough to provide law enforcement officers with justification to forego the necessity of knocking and announcing their presence.

*Id.* at 795 (citations omitted).

In the case before this Court the officers had reasonable belief that:

1. There were guns and ammunition in the apartment;

2. There were police frequency scanners in the apartment capable of intercepting police communications;

3. Woodson was engaged in the sale of cocaine from the apartment;

4. Woodson had previous arrests for cocaine possession, firearms violations, carrying a concealed weapon, and assaulting a police officer;

5. Woodson was a trespasser on the premises.

The combination of drug distribution activity, guns, ammunition, police

scanners capable of monitoring police activity, and the specific awareness of the defendant's prior assault upon a police officer present exigent circumstances that justify the "no knock" execution of the search warrant in this case.

Additionally, the Commonwealth maintains that Woodson does not have standing to contest the introduction of the evidence seized because he was a trespasser on the premises and had no reasonable expectation of privacy recognized by the Fourth Amendment to the United States Constitution or Article I, Section 10, of the Virginia Constitution. The evidence in the case reveals that Woodson was not authorized to live in the subsidized housing at 1406-A Jenny Scher Road, that he had been "banned" from the premises by both the property manager and a police officer acting on behalf of the property manager, and that he had been convicted of trespassing on those premises. It is clear that Woodson knew he was not lawfully on the premises on January 10, 1996, and in his testimony he admitted that he was living there "illegally."

The subject of "standing" to assert Fourth Amendment rights has received much attention in recent years. The so-called "target or victim theory" thought to be established in *Jones v. United States*, 362 U.S. 257 (1960), was rejected by the Court in *Rakas v. Illinois*, 439 U.S. 128 (1978). As then Justice Rehnquist observed, "[f]or we are not at all sure that the determination of a motion to suppress is materially aided by labeling the inquiry identified in *Jones* as one of standing, rather than simply recognizing it as one involving the substantive question of whether or not the proponent of the motion to suppress had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge." *Id.* at 133. Additionally, it is instructive to note that even the *Jones* case recognized an exception from the "target or victim theory" when it said, "This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched." *Jones*, 362 U.S. at 267.

The Virginia Court of Appeals has found that trespassers do not have privacy interests sufficient to invoke Fourth Amendment protection. In *Josephs v. Commonwealth*, 10 Va. App. 87 (1990), a passenger in a stolen vehicle sought to suppress contraband seized in the search of the vehicle. The court noted that Josephs, the passenger, "denied any interest in the contraband seized from the vehicle, though the trial court found otherwise. In short, Josephs failed to show any expectation of privacy by law in the stolen vehicle." *Id.* at 98. The court concluded, "We hold that the defen-

dant had no reasonable expectation of privacy in the stolen Chevrolet car and had no standing to assert any violation of Fourth Amendment rights under the circumstances of this case." *Id.* at 98.

The correctness of this principle is confirmed by the many cases from other states reaching similar results. A sampling includes the following. In *People v. Bookout*, 608 N.E.2d 598 (Ill. Ct. App. 1993), the Appellate Court of Illinois found that an invited guest to a hotel room did have standing to seek suppression of evidence seized in the room; however, the court noted, "[i]t is true that one who is wrongfully on the premises cannot invoke the privacy of the premises searched." *Id.* at 602. In *State v. Cruz*, 809 P.2d 1233 (Kan. App. 1991), the Court of Appeals of Kansas found that trespassers in a home have no reasonable expectation of privacy in the property and, consequently, have no Fourth Amendment rights in the property searched. In *Douglas v. State*, 695 S.W.2d 817 (Tex. Ct. App. 1985), the Court of Appeals of Texas denied standing to suppress evidence when a burglar sought refuge in a vacant building and was found in possession of the stolen goods. The Court of Appeals of Alaska held that trespassers in a cabin had no Fourth Amendment right of privacy and could not contest the introduction of stolen weapons at their trial. *G.R. v. State*, 638 P.2d 191 (Alaska Ct. App. 1981).

The court finds that Woodson was a trespasser on the premises at 1406-A Jenny Scher Road on January 10, 1996; consequently, Woodson cannot maintain any reasonable privacy interest in the premises sufficient to sustain his Motion to Suppress.

For the reasons stated above the defendant's Motion to Suppress is denied.