COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and AtLee
Argued at Lexington, Virginia

UNPUBLISHED

LUKAS CHARLES FULTZ

v.        Record No. 0365-19-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RICHARD Y. ATLEE, JR.
APRIL 28, 2020

FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
Marcus H. Long, Jr., Judge

Joel S. Jackson (Joel S. Jackson, P.C., on briefs), for appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General; Victoria Johnson, Assistant Attorney
General, on brief), for appellee.

The Circuit Court of Montgomery County convicted appellant Lukas Charles Fultz of

possession of marijuana. On appeal, Fultz argues that the circuit court erred in denying his

motion to suppress. For the following reasons, we affirm.

I. BACKGROUND

Officer John Crockett of the Virginia Tech Police Department was the sole witness at the

trial. He testified that he was patrolling campus dormitories as part of his regular duties. At

approximately 11:00 p.m., while in a dormitory hallway, he smelled an odor that he recognized,

from his training and experience, to be burnt marijuana. He was able to localize the source of the

smell to one room.

Officer Crockett knocked on the door of the room, and he placed his hand over the

peephole on the exterior of the door. He explained that he did this so that the room's occupants

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

would not know he was a police officer, as individuals in prior cases had destroyed evidence when they saw that law enforcement was outside. After knocking, he heard movement inside the room, and someone came to the door and opened it.

With the door open, the scent of marijuana became stronger. Officer Crockett saw three people, one of whom was Fultz, inside the room. Officer Crockett asked to enter the room, and one of the occupants consented. Officer Crockett saw Fultz holding a "vape pen." Fultz said that the room was his and provided his driver's license. Officer Crockett also saw a green leafy substance that was later confirmed to be marijuana.

Fultz filed a motion to suppress, arguing that Officer Crockett had trespassed and performed a warrantless search by placing his hand over the peephole to Fultz's dormitory door. The circuit court denied the motion. The circuit court convicted Fultz of possession of marijuana and sentenced him to thirty days in jail, with twenty days suspended. This appeal followed.

## II. ANALYSIS

When reviewing a circuit court's denial of a motion to suppress evidence, "settled principles require the appellate court to consider the evidence introduced at the suppression hearing and at trial. The Court views that evidence in the light most favorable to the Commonwealth, granting to the evidence all reasonable inferences that flow from it." Salahuddin v. Commonwealth, 67 Va. App. 190, 202 (2017) (citation omitted). "In reviewing the ruling, we are 'bound by the trial court's findings of historical fact unless "plainly wrong,"' and we 'give due weight to the inferences drawn from those facts' by the trial judge and law enforcement." Id. (quoting McGee v. Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*)). This Court reviews *de novo* whether a search or seizure violated the Fourth Amendment. Id.

The Fourth Amendment provides the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

- 2 -

Fultz argues that, by placing his hand over the exterior portion of the peephole, Crocket trespassed and performed a warrantless search. Fultz's arguments fail for numerous reasons. Most fundamentally, Officer Crockett's actions did not constitute a "search" for Fourth Amendment purposes. A search occurs "[w]hen 'the Government obtains information by physically intruding' on persons, houses, papers, or effects . . . ." Florida v. Jardines, 569 U.S. 1, 5 (2013) (quoting United States v. Jones, 565 U.S. 400, 406 n.3 (2012)). Fultz only challenges Officer Crockett's placement of his hand over the peephole. Therefore, this was not a search for Fourth Amendment purposes, because not only was there no physical intrusion,[1] but Officer Crockett also did not obtain any information as a result of the challenged action.

Any information Officer Crockett obtained prior to entering the room, while lawfully present in the public hallway (namely, his smelling burnt marijuana), was not a search for Fourth Amendment purposes. See California v. Ciraolo, 476 U.S. 207, 213-14 (1986) (holding that officers' observing marijuana plants "in a physically nonintrusive manner" from public airspace did not constitute a search). Officer Crockett only obtained additional evidence after an occupant of the room knowingly consented to his entering the room after being able to identify him as a law enforcement officer. See Commonwealth v. Viar, 15 Va. App. 490, 494 (1992) ("It is irrelevant that the police gained entry by ruse or stratagem, as long as the consent to enter was not revoked prior to the police identifying themselves."). Officer Crockett covering the peephole gave him no information about what was going on behind the door; it solely served to prevent his

---

[1] It is uncontested that Officer Crockett was lawfully present when he was in the dormitory hallway, and Fultz does not argue that the exterior of the door is protected "curtilage." Although those concessions are hard to reconcile with Fultz's argument that the action itself was a "trespass," Officer Crockett was clearly acting within his statutory authority as a campus police officer by patrolling the hallway. Code § 23.1-815(B).

being identified as a police officer before the door was opened.[2]  Because Officer Crockett did not obtain any incriminating information by covering the peephole, there was no search for Fourth Amendment purposes.

### III.  CONCLUSION

The circuit court did not err when it denied Fultz's motion to suppress, as there was no unlawful trespass or search that violated Fultz's Fourth Amendment rights.  Accordingly, we affirm.

<u>Affirmed.</u>

---

[2] Other jurisdictions that have addressed the lawfulness of an officer covering a peephole have reached similar conclusions—that by covering a peephole, an officer does not obtain information, and that action, by itself, does not vitiate an occupant's valid consent to the officer entering or searching the premises.  See State v. Hoffman, 318 P.3d 225, 232 (Utah Ct. App. 2013) ("[C]overing an apartment peephole is neither a trespass nor an investigation [because it] gives the officers no information about what is going on inside the home."); see also United States v. Hall, 500 F. App'x 819, 821 (11th Cir. 2012) (per curiam) ("By covering the peephole, [police] merely limited the information upon which [the defendant] acted—his decision to open the door, however, remained unfettered and uncoerced.").  But see State v. Campbell, 300 P.3d 72, 78 (Kan. 2013) (holding that officer exceeded scope of a "knock and talk" by "conceal[ing] his identity by covering the peephole and positioning himself to block the occupant's ability to determine who was standing at the door" because he "essentially forc[ed] the occupant of the apartment to make an *uninformed* decision").