THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JOHN A. BOOKOUT, Defendant-Appellee.

Fifth District   No. 5—91—0103

Opinion filed February 3, 1993.

Paul Hillis, Jr., State's Attorney, of Salem (Kenneth R. Boyle, Stephen E. Norris, and Rebecca Sanders, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Stanley P. Stasiulis, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE MAAG* delivered the opinion of the court:

Defendant John A. Bookout was arrested and charged with one count of unlawful possession of a controlled substance (cocaine) and one count of unlawful possession of cannabis (Ill. Rev. Stat. 1989, ch.56½, pars. 1402(b), 704(a)). The defendant made a motion to quash his arrest and suppress the evidence seized along with his inculpatory

---

*Justice Harrison participated in oral argument. Justice Maag was later assigned to this case in substitution for Justice Harrison, and Justice Maag has read the briefs and listened to the audiotape of oral argument.

statements. The trial court granted defendant's motion. The State now appeals from the order suppressing evidence. We affirm.

At the hearing on defendant's motion, the parties stipulated that the transcript of defendant's preliminary hearing could serve as testimony in considering the motion. It was also stipulated that Michele Bassola had rented the hotel room in which defendant was arrested.

At the preliminary hearing, Officer Alan Rose of the Centralia police department testified that at approximately 3:26 a.m. on February 16, 1990, he was dispatched to the Bell Tower Inn (the Inn) in Centralia to investigate a report that juveniles were burglarizing cars on the parking lot. Officer Rose stated that upon completing his investigation, a Bell Tower Inn employee, Marsha Watkins, told him that defendant was currently throwing a party in a room at the hotel and that they "had had trouble with [defendant] *** trashing rooms in the past." Ms. Watkins requested that Officer Rose "stand by" while she told defendant to leave. Officer Rose testified that he next spoke with the Inn's manager, Norma Wessell, who also told him that defendant had "trashed rooms" in the past and asked him to "stand by" while she went to the room and asked defendant to leave. Ms. Wessell told Officer Rose that she was requesting his assistance because she "didn't want to have a problem with [defendant]."

Officer Rose testified that he then notified the police station and Officer Ingersol was sent to assist him. After Ingersol arrived, both officers accompanied Ms. Wessell to room 114 and stood next to the door as she knocked. Rose stated that in response to the knock, someone in the room asked for the password, to which Ms. Wessell replied, "I don't need a password, this is management." Officer Rose then testified as follows:

"A. [Defendant] opened the door and we said 'John, you're going to have to leave' and he had something in his hand and he turned and stuck it down the front of his pants.

Q. Was anyone else in the room?

A. Two other males and females.

Q. What happened then?

A. As he turned and stuck this unknown item down the front of his pants, the other people started running out the door of the room.

Q. What did you do when you saw [defendant] stuff something down the front of his pants?

A. It was unknown what it was, so I focused on where he put this and started asking what it was that he stuck down his pants.

* * *

Q. What happened then?

A. He didn't want to answer at first. Then he stated 'It's just some pot.'

Q. Then what did you do?

A. I was trying to kind of push John to a secure place to start the patdown and to search him to obtain this pot."

Officer Rose's search of defendant's person produced a 2.5-gram packet of "crack" cocaine and a zippered cloth bag containing a mirror, a "crack" spoon, and a vial with cocaine residue. Rose testified that while he searched defendant and placed him under arrest, Officer Ingersol searched the room, finding "crack" residue and cannabis.

On cross-examination, Rose admitted that the Inn's manager had never asked the officers to enter room 114, nor had anyone ever asked Michele Bassola for permission to enter. Rose stated that he had no warrant for defendant's arrest or any knowledge that defendant had committed an offense that evening. Officer Rose further testified on cross-examination as follows:

"Q. You immediately went in the room and searched him?

A. Well, no. I witnessed him put something down the front of his pants and he told me it was marijuana.

Q. Is that from where you were standing in the hallway or were you in the room when you saw that?

A. When I was standing outside the door, I seen [sic] him stick something in his pants and I was asking what it was he had in his pants, and I was focused in on watching him, asking him what it was. He replied 'It's just some pot'. At that time I started pushing him to a secure place and started the search.

* * *

Q. Where was Officer Ingersol while all this was going on?

A. We both seen [sic] him stick something down his front—the front of his pants, and we were both focused—as he stuck it down his pants, he turned. We were in the doorway. He stuck something down the front of his pants and turned, going toward the back of the room, and me [sic] and Officer Ingersol focused on what he stuck down his pants, and everybody else run [sic] out of the room and we didn't have a chance to stop anybody else."

On re-cross-examination, Officer Rose testified that he did not see the bag that he removed from inside defendant's pants when he was coming through the door into the room. Rose stated that he never saw any weapons in room 114.

Following defendant's arrest and transport to the police station, he was given the *Miranda* warnings and signed a written waiver. At approximately 5 a.m., defendant gave a statement indicating that he, Kayla Farthing and Michele Bassola had rented the hotel room in Bassola's name and that they were later joined by two other persons who supplied the cocaine which they all used.

In granting defendant's motion to quash arrest and suppress evidence, the trial court held that defendant had a reasonable expectation of privacy in the hotel room where he was a guest, that there was no probable cause to arrest defendant at the time of the police officer's warrantless entry into the hotel room, and that there were no exigent circumstances at the time of the entry. The court made a specific finding of fact concerning when Officer Rose entered the hotel room, which states:

> "It is unclear, based upon the stipulated evidence, whether Officer Rose of the Centralia Police Department entered Room 114 prior or subsequent to Defendant's response to Rose's question concerning what the Defendant had placed down his trousers, but it is unreasonable, on these facts, to believe Rose would have allowed the Defendant to hesitate to answer the question and retreat into the room without crossing the threshold to continue his observations and inquiry."

The State alleges that the evidence of record does not support these findings of law and fact made by the trial court.

It is well established that a reviewing court will not disturb the trial court's ruling on a motion to suppress unless that ruling is determined to be manifestly erroneous. (*People v. Reynolds* (1983), 94 Ill. 2d 160, 165, 445 N.E.2d 766, 769; *People v. Industrial Salvage, Inc.* (1985), 136 Ill. App. 3d 1068, 1071, 484 N.E.2d 322, 323.) It is the trial court's function on a motion to suppress to determine the credibility of the witnesses and to resolve conflicts in the evidence (*People v. Jones* (1989), 184 Ill. App. 3d 412, 425, 541 N.E.2d 132, 141), and that court's determination of factual matters will not be disturbed unless manifestly erroneous. *People v. Free* (1983), 94 Ill. 2d 378, 401, 447 N.E.2d 218, 229, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200.

■ In order to have standing to challenge a search, a defendant must demonstrate that his own fourth amendment rights have been violated. (*People v. Walters* (1989), 187 Ill. App. 3d 661, 665-66, 543 N.E.2d 508, 511.) To do so, a defendant must demonstrate that he has a reasonable expectation of privacy in the place searched or the property seized. (*People v. Johnson* (1986), 114 Ill. 2d 170, 191, 499

N.E.2d 1355, 1364, *cert. denied* (1987), 480 U.S. 951, 94 L. Ed. 2d 802, 107 S. Ct. 1618; *Walters*, 187 Ill. App. 3d at 666, 543 N.E.2d at 511.) The State asserts that at the time the police entered room 114 at the Inn, defendant did not have a reasonable expectation of privacy so as to be able to assert his fourth amendment rights in the premises.

■ It has been held that an unregistered overnight guest of the occupant of a hotel room had standing to challenge the search of that room, because this status established a reasonable expectation of privacy. (*People v. Olson* (1990), 198 Ill. App. 3d 675, 681-82, 556 N.E.2d 273, 277.) In reaching this conclusion, the *Olson* court relied on a United States Supreme Court case, *Minnesota v. Olson* (1990), 495 U.S. 91, 109 L. Ed. 2d 85, 110 S. Ct. 1684, which held that an overnight guest in another's home had standing to challenge the legality of his arrest in that home, and on an Illinois Supreme Court decision, *People v. Eichelberger* (1982), 91 Ill. 2d 359, 438 N.E.2d 140, *cert. denied* (1982), 459 U.S. 1019, 74 L. Ed. 2d 514, 103 S. Ct. 383, which held that the fourth amendment applies equally to private residences and hotel rooms.

■ In the Illinois *Olson* case, the defendant was arrested in bed, apparently sleeping, at about 3:30 or 4 a.m. Here, defendant was a guest at a party in Michele Bassola's room when he was arrested there at approximately 3:30 or 4 a.m. "[A] person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place." (*Rakas v. Illinois* (1978), 439 U.S. 128, 142, 58 L. Ed. 2d 387, 400, 99 S. Ct. 421, 430.) As in *Olson*, we believe defendant's status as an invited guest in the hotel room gave him a legally sufficient interest and established a reasonable expectation of privacy in the premises for fourth amendment purposes.

The State alternatively argues that defendant did not have a reasonable expectation of privacy in room 114 because, prior to his arrest and search, he had been asked to leave the premises by the Inn's management and was thus a trespasser. It is true that one who is wrongfully on the premises cannot invoke the privacy of the premises searched. (*Jones v. United States* (1960), 362 U.S. 257, 267, 4 L. Ed. 2d 697, 706, 80 S. Ct. 725, 734.) However, in both civil and criminal law, a person on leased premises at the express invitation of the tenant is not a trespasser. (*Karow v. Student Inns, Inc.* (1976), 43 Ill. App. 3d 878, 883, 357 N.E.2d 682, 687; see also *People v. Rynberk* (1980), 92 Ill. App. 3d 112, 115, 415 N.E.2d 1087, 1091.) There is no reason to believe that the law on this point differs with regard to the

invitee of a hotel guest. (See 43A C.J.S. *Inns, Hotels, and Eating Places* §16 (1978) (a person who is not a guest has in general no legal right to enter or remain in an inn against the will of the innkeeper, but an invitee of a guest ordinarily may remain in the inn in the absence of reasonable restrictions or regulations to the contrary).) Therefore, defendant cannot be deemed to be a trespasser and wrongfully on the premises since he was present at the express request of a lawful guest. See *Karow*, 43 Ill. App. 3d at 883, 357 N.E.2d at 687.

Even if the Inn had sufficient grounds to lawfully eject defendant, he would not have been wrongfully on the premises as a trespasser unless he remained after receiving notice from the owner to depart. (See Ill. Rev. Stat. 1989, ch. 38, par. 21—3(a).) The record does not show that defendant had the opportunity to "remain" in the room any length of time after being told to leave. Therefore, under the facts of this case, we do not believe defendant was wrongfully on the premises so as to prevent him from asserting his privacy rights under the fourth amendment.

■ The State next contends that the trial court erred in finding that Officer Rose did not have probable cause to believe a crime was being committed in his presence prior to his entry into room 114. An offense is committed in an officer's presence when knowledge of the commission of an offense is acquired through any of his senses. (*Eichelberger*, 91 Ill. 2d at 369, 438 N.E.2d at 144.) In *Eichelberger*, the Illinois Supreme Court held that in cases where an offense is committed in the presence of an officer, the officer may enter the premises without a warrant for the purpose of making a warrantless arrest. (91 Ill. 2d at 369, 438 N.E.2d at 145.) However, the *Eichelberger* court specifically distinguished the factual situation found in *Johnson v. United States* (1948), 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367, noting that the arresting officer in *Johnson* did not have probable cause to arrest the defendant until *after* his entry into the hotel room the defendant occupied: "In essence, the officer, prior to entry, did not possess the knowledge which justified a warrantless arrest of a person on the basis that an offense was committed in his presence." *Eichelberger*, 91 Ill. 2d at 368-69, 438 N.E.2d at 144.

■ In the instant case, the trial court found, as in *Johnson*, that at the time of the officer's entry into the hotel room, the officer did not have probable cause to arrest defendant. This conclusion by the trial court was based on its finding that Officer Rose had entered room 114 prior to the time defendant responded to the officer's question concerning what defendant had placed down his pants. The State does not argue that defendant's mere act of concealing something in

his pants constituted probable cause but contends that "[h]e was arrested because, asked what he had concealed, the defendant volunteered he had some pot." Therefore, the State has conceded that unless Officer Rose entered room 114 following defendant's answer, there was no probable cause upon which to base a warrantless arrest of defendant.

The trial court found that, based upon the stipulated evidence, "it is unreasonable *** to believe Rose would have allowed the Defendant to hesitate to answer the question and retreat into the room without crossing the threshold to continue his observations and inquiry." Several inconsistencies in Officer Rose's testimony support the trial court's finding.

First, if Rose and Officer Ingersol were "standing outside the door" or "in the doorway" at the time they saw defendant stick something down the front of his pants, it is unclear how the four other occupants of the hotel room could run unimpeded through or by the two officers so that they "didn't have a chance to stop anybody else." Second, Officer Rose testified that defendant "stuck something down the front of his pants and turned, going toward the back of the room," and that Rose had "focused on where [defendant] put this." However, Rose did not explain how, after defendant had turned and retreated into the room, he could have maintained such a view while remaining at the door. Third, although Rose stated that, when asked what he was concealing, defendant "didn't want to answer at first" and had walked toward the back of the room, Rose also testified that when defendant did answer, Rose "started pushing" or "was trying to kind of push" defendant to a secure place to start the search. However, it would have been impossible for Rose to push defendant if, at the time defendant answered, Rose was across the room in the doorway as he claimed. Given these inconsistencies, we find that the trial court was not manifestly erroneous in concluding that Officer Rose had entered the hotel room "to continue his observations and inquiry," prior to the time defendant responded to Rose's question and probable cause to arrest was established.

Here, as in *Johnson*, where the officer did not have probable cause to arrest prior to the time he entered a hotel room in which defendant had a reasonable expectation of privacy, a warrantless entry could not be justified on the basis that an offense was being committed in the officer's presence. (See *Johnson*, 333 U.S. at 15-16, 92 L. Ed. at 441, 68 S. Ct. at 369-70; *Eichelberger*, 91 Ill. 2d at 368-69, 438 N.E.2d at 144-45.) Having concluded that no probable cause existed for the warrantless entry into room 114, we need not reach the

ultimate question addressed in *Eichelberger, i.e.,* whether the officers' reasonable belief that a felony was being committed in their presence constituted an exigent circumstance which justified the warrantless entry into the hotel room for the purpose of making an arrest. (*Eichelberger,* 91 Ill. 2d at 369, 438 N.E.2d at 145.) The arrest being invalid, defendant's fourth amendment rights were violated by the warrantless entry into room 114 and the evidence and statement obtained as a result of defendant's arrest and search must be suppressed.

Accordingly, the order of the trial court is affirmed.

Affirmed.

WELCH and GOLDENHERSH, JJ., concur.