THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v. SCOTT C. SEEHAUSEN, Petitioner-Appellant.

Second District    No. 2—91—0879

Opinion filed June 7, 1993.

G. Joseph Weller and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

Petitioner, Scott Seehausen, appeals the judgment of the circuit court of Du Page County dismissing his petition for post-conviction relief (see Ill. Rev. Stat. 1991, ch. 38, par. 122—2.1(a)(2) (now codified, as amended, at 725 ILCS 5/122—2.1(a)(2) (West 1992))). Petitioner contends that the court erred in dismissing as frivolous his *pro se* petition in which he alleged his appellate counsel's ineffectiveness for

failing to raise as an issue whether there was an emergency situation to warrant the issuance of an eavesdropping order.

Petitioner was found guilty by a jury of the offenses of attempted murder (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4(a), 9—1(a)(1) (now codified, as amended, at 720 ILCS 5/8—4(a), 5/9—1(a)(1) (West 1992))) and solicitation to commit murder (Ill. Rev. Stat. 1985, ch. 38, par. 8—1(a) (now codified, as amended, at 720 ILCS 5/8—1.1(a) (West 1992))). The court sentenced petitioner to 16 years' imprisonment. This court affirmed the conviction and sentence on direct appeal. *People v. Seehausen* (1990), 193 Ill. App. 3d 754.

According to the evidence at trial, petitioner solicited Jeffery Witzke to deliver to Stanley Fry a beef sandwich laced with sodium cyanide. On June 11, 1986, Witzke warned Fry of the impending murder attempt. Fry alerted the Westmont police, and Witzke agreed to cooperate with the police. The following afternoon, June 12, 1986, the State obtained an eavesdropping order permitting Witzke to tape-record conversations between himself and petitioner. The State also received permission to put a recording device on the telephone in Fry's office. Witzke was with petitioner from shortly after noon until approximately 7 p.m., most of that time driving around in petitioner's car. Witzke brought a bag of sandwiches to Fry's office shortly after 7 p.m. Petitioner telephoned Fry's office while Witzke was there. At the direction of the police officers, Witzke telephoned petitioner in his car and told him that Fry had eaten the sandwich and collapsed but was still breathing. Petitioner told Witzke to suffocate Fry. After this conversation, Witzke left the office and returned to petitioner's car, which was parked nearby. The police then arrested petitioner. The tapes from both devices were played to the jury.

Prior to trial, petitioner moved to suppress the tapes of conversations between himself and Witzke. At the hearing, on June 12, 1987, the parties stipulated to the following facts. Detective Vincent Musial, of the Westmont police department, spoke with Witzke and Fry on June 11, 1986, between 5:30 and 9 p.m. Witzke agreed to record conversations between himself and petitioner the following day. Witzke signed a consent form to that effect. Shortly after 9 p.m., Musial called an assistant State's Attorney and discussed the case with him. The assistant State's Attorney advised Musial to meet with him and other assistant State's Attorneys at the State's Attorney's office the following morning. While Musial was at the State's Attorney's office the morning of June 12, 1986, he received a page to call Witzke, which he did. Witzke indicated to Musial that Witzke had received a phone call from petitioner and that he was to pick up petitioner at his

home. Witzke told Musial that petitioner said, " 'Today was Dee [*sic*] day.' " For the rest of the morning, Musial assisted in preparing the petition for the eavesdropping order.

Around 11:20 a.m., Musial contacted Witzke and informed him that he had emergency authorization from the State's Attorney's office to record the meeting with petitioner. Witzke began recording conversations with petitioner at around noon and continued taping until petitioner was arrested, shortly after 7:30 p.m.

Later that afternoon, Musial and Fry testified in court in support of the petition, and the State presented the signed consent form of Witzke. Included in the common-law record is a copy of the petition for the order authorizing the use of an eavesdropping device. In the petition, Musial stated that on June 11, 1986, Witzke told him that petitioner planned the murder to occur in the "late afternoon or early evening of June 12, 1986." At 9:34 a.m., Musial received a call from Witzke, who informed Musial that he "received a call" from petitioner. Petitioner told Witzke to crush a cyanide egg, put it in a container and be at petitioner's house at noon. Based on this information, Musial secured an emergency authorization for the use of an eavesdropping device at 11:20 a.m.

Also in the record is a copy of the order authorizing the eavesdropping. The trial court found that it would have granted an order authorizing the use of an eavesdropping device prior to 11:20 a.m. had the information been available to the court at that time. The court further found that an emergency situation existed at 11:20 a.m. which justified the immediate use of an eavesdropping device. The order authorizing the eavesdropping was signed at 3:58 p.m.

The trial court denied the motion to suppress, finding that there was sufficient evidence for the court that issued the order to decide that an emergency situation was present, and the order and taping were done within 48 hours. The court further found that there was no way that the matter could have been expedited, there was a true emergency, and the necessary parties consented to the taping.

Petitioner filed a motion to reconsider the order, which was denied. In addition to the reasons set forth at the earlier hearing, the court noted that Fry told Musial about an investment situation with petitioner, which provided a motive for petitioner to murder Fry. Also, Musial had seen a receipt for the cyanide, and the can of cyanide was found in the trunk of Witzke's car.

At trial, Witzke testified that petitioner informed him that the scheme to poison Fry would be executed the night of June 12. Witzke had given Musial tapes Witzke recorded of conversations between

himself and petitioner on June 11 (the tapes were barred by a motion *in limine*), and Musial listened to those tapes on the night of June 11. Witzke testified that Musial asked Witzke to inform the police when Witzke learned what time petitioner was going to kill Fry. Witzke denied that petitioner called him the morning of June 12.

On April 25, 1991, petitioner filed his petition for post-conviction relief (Ill. Rev. Stat. 1991, ch. 38, par. 122—1 *et seq.* (now codified, as amended, at 725 ILCS 5/122—1 *et seq.* (West 1992))) alleging, among other things, that his appellate counsel was ineffective for failing to raise as an issue on appeal that the court should have suppressed the evidence of the tapes recorded by Witzke because there was no emergency to authorize the order. (See Ill. Rev. Stat. 1985, ch. 38, par. 108A—6 (now codified, as amended, at 725 ILCS 5/108A—6 (West 1992)).) Petitioner attached to the petition a copy of the motion filed in the trial court seeking to suppress the tapes, and a copy of the transcript from the hearing. The petition was docketed June 13, 1991. On July 12, 1991, the court dismissed the petition as frivolous and patently without merit. (See Ill. Rev. Stat. 1991, ch. 38, par. 122—2.1(a)(2) (now codified, as amended, at 725 ILCS 5/122—2.1(a)(2) (West 1992)).) Petitioner timely appealed.

■ Petitioner contends that the trial court erred in summarily dismissing his post-conviction petition because the issue of his appellate counsel's effectiveness was not frivolous. A post-conviction proceeding is a collateral attack on a judgment which provides a remedy to criminal defendants who claim a substantial violation of their constitutional rights. (*People v. Flores* (1992), 153 Ill. 2d 264, 272.) A post-conviction petitioner is not entitled to an evidentiary hearing on the petition unless the allegations make a substantial showing that the petitioner's rights have been violated. (*People v. Emerson* (1992), 153 Ill. 2d 100, 106.) A reviewing court will not reverse a trial court's determination in a post-conviction proceeding unless the judgment is manifestly erroneous. *People v. Odle* (1992), 151 Ill. 2d 168, 172.

To establish the ineffective assistance of appellate counsel, the petitioner must show that counsel's failure to raise an issue was objectively unreasonable and that, but for this failure, there was a reasonable probability that his conviction would have been reversed. (*People v. Stewart* (1990), 141 Ill. 2d 107, 119.) If the petitioner was not prejudiced by the alleged error, the court need not determine whether counsel's acts or omissions were outside the range of professionally competent assistance. *Strickland v. Washington* (1984), 466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069; *People v. Albanese* (1984), 104 Ill. 2d 504, 527.

█ To determine whether petitioner was denied the effective assistance of appellate counsel, we must consider the merits of the emergency eavesdropping issue. Evidence obtained in violation of the Illinois eavesdropping statute is inadmissible in a criminal proceeding. (Ill. Rev. Stat. 1985, ch. 38, par. 14—5 (now 720 ILCS 5/14—5 (West 1992)); *Seehausen*, 193 Ill. App. 3d at 761.) Eavesdropping consists of using a device to hear or record all or part of a conversation without the consent of all the parties to the conversation and without complying with articles 108A or 108B of the Code of Criminal Procedure of 1963 (Code). (Ill. Rev. Stat. 1985, ch. 38, par. 14—2(a) (now codified, as amended, at 720 ILCS 5/14—2(a) (West 1992)); *Seehausen*, 193 Ill. App. 3d at 761.) According to section 108A—6(a) of the Code, upon approval of a State's Attorney, a law enforcement officer may use an eavesdropping device in an emergency situation. (Ill. Rev. Stat. 1985, ch. 38, par. 108A—6(a) (now codified, as amended, at 725 ILCS 5/108A—6(a) (West 1992)).)

> "An emergency situation exists when, without previous notice to the law enforcement officer sufficient to obtain prior judicial approval, the conversation to be overheard or recorded will occur within a short period of time or the use of the device is necessary for the protection of the law enforcement officer." (Ill. Rev. Stat. 1985, ch. 38, par. 108A—6(a) (now codified, as amended, at 725 ILCS 5/108A—6(a) (West 1992)).)

Petitioner asserts that, on the evening of June 11, the State had ample reason to believe that a conversation between Witzke and petitioner would occur on June 12 and, therefore, should have sought authorization on the evening of June 11. Petitioner reasons that there was no emergency to justify the assistant State's Attorney's approval of the taping. We disagree.

█ There is no evidence that, on June 11, 1986, Detective Musial or the assistant State's Attorney knew that Witzke was going to pick up petitioner at noon on June 12, 1986. It appears that, from the information Witzke provided, Musial was under the assumption that the conversations between petitioner and Witzke would not occur until late in the afternoon. Thus, Musial and the assistant State's Attorney had no reason to believe that they would not have time to obtain the authorization for the eavesdropping before the first conversation was to have occurred. It was not until 9:30 a.m. on June 12 that Musial first learned that Witzke was going to be with petitioner all day from noon onward. Moreover, the record shows that Musial and the assistant State's Attorney reasonably believed that emergency authorization was necessary at 11:20 a.m. because it was likely that they would

not be able to contact Witzke after he picked up petitioner and before the murder attempt. This 2½-hour time period between Musial's call to Witzke, at 9:30 a.m., and the time when Witzke was to pick up petitioner, noon, is sufficiently short to satisfy the statute. (See *People v. Schnurr* (1990), 206 Ill. App. 3d 522, 532 (50 minutes a sufficiently short period of time).) Thus, there was an emergency situation which justified the emergency authorization.

Because this issue lacks merit, petitioner did not suffer any prejudice from appellate counsel's failure to raise it in the direct appeal. We conclude that, because petitioner was not denied the effective assistance of appellate counsel, the trial court did not err in dismissing the post-conviction petition.

The judgment of the circuit court is affirmed.

Affirmed.

GEIGER and QUETSCH, JJ., concur.