THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGGIE HARRE, Defendant-Appellant.

Fifth District    No. 5—92—0201

Opinion filed June 15, 1994.

Robert Agostinelli and Thomas A. Karalis, both of State Appellate Defender's Office, of Ottawa, for appellant.

Norbert J. Goetten, Stephen E. Norris, and Diane L. Campbell, all of State's Attorneys Appellate Prosecutor's Office, of Mt. Vernon, for the People.

JUSTICE WELCH delivered the opinion of the court:

Reggie Harre (defendant) appeals from an order of the circuit court of Fayette County denying his petition for post-conviction relief.

At approximately 8 p.m. on September 12, 1989, Officer Larry Coughlin, Sergeant Stephen Poe, and Agent Frederick Bray, all officers with the Illinois State Police, entered onto a rural Fayette County tract of land improved with a house. This property was later determined to be owned by Nell Rinehart. Based on information received by Officer Coughlin that a number of windows had recently been boarded up and that a strong odor was coming from the house, the three officers decided to investigate. Officer Coughlin approached the house from the east, looked through a window, and observed two people sitting at a table doing something with their hands. Sergeant Poe walked along the north side of the house and was able to see through a window two people he knew to be Joe and Diane Radcliff processing marijuana plants.

Based on the information they had gathered, Officer Coughlin left and obtained a warrant while Sergeant Poe stayed at the house. After returning with a warrant and more officers, the house was searched and the Radcliffs were arrested. The officers seized approximately 70 pounds of cannabis from the house. Additionally, Officer Coughlin observed food, a portable television set, a table, a couch, some chairs, and some clothes in the house. Electricity was also working in the house. Once the Radcliffs were placed under arrest and read their rights, Joe Radcliff informed the officers that they did not control the house, but that Charles and Reggie Harre did, and that the Harres were expected back later that night.

Sometime in the early morning of September 13, 1989, Charles and Reggie Harre drove onto the property, pulled into a parking area, and parked next to the house. To get onto the property by car, the Harres had to open and pass through a gate which was located approximately one-third to one-half the way up the private road leading to the house. When Officer Coughlin first saw the car, Charles was sitting on the front fender of the car and defendant was driving. While Sergeant Poe was apprehending Charles, Officer Coughlin approached the car and ordered the driver, whom he recognized, to get out of the car. As defendant exited the car, Officer Coughlin saw

a handgun and a rifle on the front bench seat of the car. The next morning, after obtaining a warrant to search defendant's car, the police seized from the car the two weapons, one white plastic bag containing cannabis, and two trash bags containing cannabis.

On September 15, 1989, defendant was charged in an amended information with one count of armed violence and one count of unlawful possession of cannabis with the intent to deliver. The armed violence count alleged that defendant committed the felony offense of unlawful possession while armed with a rifle and a handgun. The unlawful possession count alleged that defendant possessed with the intent to deliver more than 500 grams of a substance containing cannabis.

On December 21, 1989, defendant filed a motion to quash arrest and search warrant and to suppress illegally seized evidence. Defendant alleged that: (1) the police officers surreptitiously entered the property, without a warrant or permission from the owner or her real estate agent, to determine if criminal activity was taking place; (2) his arrest resulted from the officers obtaining and executing a search warrant on the basis of their observations at the time of their invasion onto the property; (3) he entered the Rinehart property with the permission of Charles Harre, who had transacted the purchase of the property; (4) he had a reasonable expectation of privacy on said premises; and (5) the State's invasion of his privacy constituted "a violation of [his] right against unreasonable search and seizures guaranteed under the Sixth Amendment [*sic*] and the U.S. Constitution."

On January 22, 1990, defendant's motion was heard. Following testimony from Officer Coughlin and Sergeant Poe, Nell Rinehart testified, *inter alia*, that: (1) she owned the property where the events of September 12-13, 1989, occurred; (2) she had not lived on the property since early 1986; (3) sometime in July 1989 she decided to sell the property; (4) at the end of August 1989, right around Labor Day, she received a call from Dale Bernhardt (her real estate agent with whom the property was listed) informing her that an offer had been made; (5) right after Labor Day, she accepted the offer and signed a contract for sale of the property; (6) according to the contract, the buyer was to take possession on October 1, 1989; (7) she dealt solely with her real estate agent concerning the sale; (8) she had never met or talked to the contract purchaser (*i.e.*, Charline Jett/P&M Consulting Company); (9) she had never met the defendant; and (10) she had never given anyone permission to go onto the property other than for the purpose of viewing it for sale.

The defendant testified, *inter alia*, that: (1) he was aware that the

property on which he and Charles were arrested was in the process of being sold to Charline Jett and the P&M Consulting Company; (2) he never spoke to Nell Rinehart or Dale Bernhardt; (3) he was verbally asked by Charles, on behalf of Charline Jett, to prepare the property for occupancy; (4) although he was unaware of the details of the real estate sales contract, he thought he had the right to be on the property; (5) he entered the property and started cleaning it up (*i.e.*, mowing the grass, clearing the area of tree limbs, and cutting down a tree) in early September; and (6) he boarded up the windows because he was storing some tools inside the house.

After defendant rested, the State moved for a directed finding that defendant lacked standing to challenge the initial warrantless entry onto the Rinehart property which ultimately led to his arrest. The State argued that defendant lacked standing to contest the search because neither the contract purchaser nor defendant was entitled to be on the property prior to October 1, 1989, and thus, defendant had no reasonable expectation of privacy in the premises. At the conclusion of the hearing, the trial court granted a directed finding in favor of the State and denied defendant's motion.

On February 13, 14, and 15, 1990, the case went to jury trial. For purposes of this post-conviction appeal, we need not chronicle the evidence adduced at trial. We note only the testimony of Don Bernhardt, the real estate agent. He testified that he: (1) had not given defendant permission to enter the property in advance of the closing date and (2) had told Charles that he could enter the property, but only for the purpose of cleaning it up.

The jury returned a verdict of guilty on both counts. On March 23, 1990, after the trial court denied his motion for a new trial, defendant was sentenced to an eight-year term of imprisonment and fined $5,000. Defendant appealed. The sole issue on direct appeal was whether defendant was entitled to a $960 credit against his fine pursuant to section 110—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 110—14), because he spent 192 days in jail from the time of arrest through sentencing. On May 20, 1991, this court, in an order entered pursuant to Supreme Court Rule 23 (134 Ill. 2d R. 23), affirmed defendant's conviction but modified his sentence to reflect the $960 credit for pretrial incarceration against the $5,000 fine. *People v. Harre* (1991), 212 Ill. App. 3d 1114, 614 N.E.2d 915.

On March 22, 1991, defendant filed a petition for post-conviction relief. Following a change in counsel, defendant filed on November 8, 1991, an amended petition for post-conviction relief. On December 5 and 27, 1991, defendant filed supplemental petitions for post-

conviction relief. On January 31, 1992, a hearing on defendant's post-conviction claims was held. At the conclusion of this hearing, the post-conviction court denied the majority of defendant's claims and reserved ruling on other claims. The post-conviction court concluded, *inter alia*, that appellate counsel was not ineffective for failing to raise the suppression issue on direct appeal. On February 24, 1992, the post-conviction court denied defendant's remaining claims.

Defendant now appeals and raises this issue: whether the post-conviction court erred in rejecting defendant's claim that his appellate counsel was ineffective for failing to argue on direct appeal that defendant's motion to suppress was improperly denied for lack of standing where defendant kept his personal property in the residence he was preparing for occupancy by the contract purchaser and had taken steps to exclude outsiders from the premises.

To establish the ineffective assistance of appellate counsel, a petitioner must demonstrate two things: (1) that counsel's failure to raise an issue was objectively unreasonable and (2) that, but for this failure, there was a reasonable probability that petitioner's conviction would have been reversed. (*People v. Seehausen* (1993), 245 Ill. App. 3d 506, 510, 615 N.E.2d 376, 379.) It is well established that ineffective assistance of appellate counsel exists where counsel fails to argue a patently meritorious issue on direct appeal. (See, *e.g.*, *People v. Logan* (1991), 224 Ill. App. 3d 735, 586 N.E.2d 679; *People v. Ferro* (1990), 195 Ill. App. 3d 282, 551 N.E.2d 1378.) However, appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence for counsel to refrain from raising issues that, in his opinion, are without merit, unless counsel's appraisal of the merits is patently wrong. (*Logan*, 224 Ill. App. 3d at 739, 586 N.E.2d at 682; *Ferro*, 195 Ill. App. 3d at 288, 551 N.E.2d at 1383.) A reviewing court will not reverse a post-conviction court's determination unless the judgment is manifestly erroneous. *Seehausen*, 245 Ill. App. 3d at 510, 615 N.E.2d at 379.

With the foregoing in mind, we now turn to consider whether appellate counsel failed to raise a "patently meritorious" claim (*i.e.*, whether the trial court improperly denied defendant's motion to quash arrest and suppress evidence) on direct appeal. Defendant argues that the post-conviction court erred in denying his petition on this issue "since case law fully supports defendant's position that he had a reasonable expectation of privacy in the dwelling he was preparing for occupancy by the contract buyer." Defendant concludes that he "would have been able to establish his Fourth Amendment standing on direct appeal." We disagree with defendant on both points.

In order to assess defendant's claim, we must briefly review the law as it relates to the fourth amendment to the United States Constitution, which "protects people, not places." (*Katz v. United States* (1967), 389 U.S. 347, 351, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511.) The United States Supreme Court has held that the capacity to assert the protection of the fourth amendment depends upon whether the person claiming the protection of the amendment has a legitimate expectation of privacy in the invaded place. (*Minnesota v. Olson* (1990), 495 U.S. 91, 95, 109 L. Ed. 2d 85, 92, 110 S. Ct. 1684, 1687; *Rakas v. Illinois* (1978), 439 U.S. 128, 143, 58 L. Ed. 2d 387, 401, 99 S. Ct. 421, 430.) In order to have standing to challenge a search, a defendant must demonstrate that his own fourth amendment rights have been violated. To do so, a defendant must demonstrate that he had a legitimate expectation of privacy in the place searched or the property seized. (*People v. Bookout* (1993), 241 Ill. App. 3d 72, 76, 608 N.E.2d 598, 601; *People v. Johnson* (1992), 237 Ill. App. 3d 860, 864, 605 N.E.2d 98, 102.) A five-factor test is applied to determine whether a defendant had a legitimate expectation of privacy. As the court in *Johnson* succinctly stated:

> "The relevant factors necessary to determine whether a reasonable expectation of privacy exists include whether a defendant (1) was legitimately present in the area searched, (2) had a possessory interest in the area or property seized, (3) had used the area searched or property seized, (4) had the ability to control or exclude others from using the property, and (5) had a subjective expectation of privacy in the property." *Johnson*, 237 Ill. App. 3d at 864, 605 N.E.2d at 102.

Before applying these factors to the instant case, we wish to generally address defendant's reliance on a line of cases finding that *guests* in homes and hotel/motel rooms had a legitimate expectation of privacy in the premises sufficient to confer standing to challenge the search under the fourth amendment. (See *Olson*, 495 U.S. 91, 109 L. Ed. 2d 85, 110 S. Ct. 1684; *Bookout*, 241 Ill. App. 3d 72, 608 N.E.2d 598; *Johnson*, 237 Ill. App. 3d 860, 605 N.E.2d 98; see also *People v. Olson* (1990), 198 Ill. App. 3d 675, 556 N.E.2d 273.) We believe these cases are distinguishable. First, the Supreme Court in *Olson* stated, "We need go no further than to conclude *** that *Olson's status as an overnight guest is alone enough to show that he had an expectation of privacy in the home ****." (Emphasis added.) (*Olson*, 495 U.S. at 96-97, 109 L. Ed. 2d at 93, 110 S. Ct. at 1688.) Defendant in the instant case was not an overnight guest. *Bookout* and the Illinois *Olson* case simply relied on the Supreme Court's *Olson* decision to include overnight guests in hotel/motel rooms. *Johnson* likewise extended

*Olson* to nonovernight guests who store possessions in another's house and have "ready and frequent" access to the premises. Moreover, unlike the defendants in the cases cited above, the present defendant had no direct contact with the person in possession of the premises. Additionally, the defendants in the previously cited cases had *express permission* to either be on the premises (*Olson, Bookout,* and *Olson*) or to store items in the premises (*Johnson*). Therefore, we conclude that defendant's mere presence on the Rinehart property, for the purpose of cleaning it up, is sufficiently distinguishable from the cases cited by defendant.

Applying the five factors enunciated in *Johnson* to the instant case, we conclude that defendant did not have a reasonable expectation of privacy in the Rinehart property.

## 1. WAS DEFENDANT LEGITIMATELY PRESENT IN THE AREA SEARCHED?

It was Charles who had asked for and received permission from Bernhardt, the real estate agent, to go onto the property. Defendant had no permission from Bernhardt or the owner to be on the property. While we agree with defendant that everyone helping Charles should not have to personally obtain permission in order to go onto the property, the question arises as to the scope of the permission given to Charles, and hence defendant. When asked by the State's Attorney as to the specific permission given Charles, Bernhardt replied that it was for the purpose of cutting some weeds and brush. Charles did not have permission to hook up electricity, move into the house, or use the property beyond cleaning up the grounds. Defendant cannot exceed the scope of permission granted to Charles. The bottom line is that Charles and defendant were legitimately present on the Rinehart property for a limited purpose: to cut some weeds and brush. Defendant's mere presence on the Rinehart property to clean it up is insufficient to establish a *legitimate* presence in the area searched, *i.e.,* the house.

## 2. DID DEFENDANT HAVE A POSSESSORY INTEREST IN THE AREA SEARCHED?

Defendant had no possessory interest in the area searched.

## 3. DID DEFENDANT USE THE AREA SEARCHED?

Defendant did not *use* the area searched. Rather, he performed basic acts of maintenance on the property such as cutting weeds and brush. In both *Olson* cases, *Johnson,* and *Bookout,* the defendants had used the area searched either for sleeping purposes or as a place

to store things. But even if defendant in the instant case is deemed to have "used" the house by storing some of his possessions in it, he and Charles did so without permission. Charles and defendant had no more right to enter or use the house than a common trespasser.

## 4. DID DEFENDANT HAVE THE ABILITY TO CONTROL OR EXCLUDE OTHERS FROM USING THE PROPERTY?

Defendant did not have the ability to control or exclude others from using the property. First, defendant (via Charles) had no authority from the owner or the real estate agent to control or exclude others from using the property. Second, defendant had no possessory interest in the property whatsoever. Third, defendant was on the property for the limited purpose of performing some grounds work. Fourth, defendant was a trespasser in relation to the house. One trespasser has no power to exclude another trespasser.

## 5. DID DEFENDANT HAVE A SUBJECTIVE EXPECTATION OF PRIVACY IN THE PROPERTY?

Even assuming that defendant had a subjective expectation of privacy, his subjective expectation is only one of the relevant factors to be considered.

Having weighed all of the foregoing factors, we conclude that defendant did not have a reasonable expectation of privacy in the Rinehart property. As a result, defendant lacked standing to contest the search. Because the trial court's denial of defendant's motion to suppress was not a patently meritorious issue, defendant's appellate counsel was not ineffective for failing to raise the issue on direct appeal.

For the aforementioned reasons, we hereby affirm the order of the circuit court of Fayette County.

Affirmed.

CHAPMAN and RARICK, JJ., concur.