THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BOBBY MILTON, Defendant-Appellant.

First District (2nd Division)    No. 1—03—2704

Opinion filed December 7, 2004.—Rehearing denied January 6, 2005.

Michael J. Pelletier and Linda Olthoff, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Mary L. Boland, and Leanna Baly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

After two separate bench trials, the trial court found defendant Bobby Milton guilty of two counts of possession of a controlled

substance (02 CR 10622) and one count of possession of a controlled substance with intent to deliver (01 CR 24095). The trial court held a hearing on defendant's posttrial motions for both trials, including his *pro se* motions alleging ineffective assistance of counsel. That same day, the court sentenced defendant to two concurrent two-year prison terms for possession of a controlled substance and a consecutive eight-year term for possession of a controlled substance with intent to deliver.

On appeal, defendant contends he received ineffective assistance of counsel during both trials and that the trial court failed to properly inquire into his *pro se* posttrial motions. We affirm.

FACTS

*Case Number 02 CR 10622*

At the first trial, Chicago police officer Tim Fitzpatrick testified he and his partner, Officer Devine, were patrolling in plain clothes in an unmarked car on the evening of March 23, 2002. At the intersection of Francisco Avenue and Flourney Street, they observed defendant approach the driver's side of a parked car. Defendant began talking to the driver. From a distance of 10 feet, Officer Fitzpatrick saw defendant holding small silver and plastic objects in his right hand. The driver held up money. At that point, the officers exited their car. When defendant saw the officers approaching, he turned around, closed his right hand, and started walking away from them. As he walked, he dropped the objects in his right hand to the ground. Officer Fitzpatrick testified he could not see the objects hit the ground because his car hood obstructed his view. Fitzpatrick believed the items were heroin and cocaine. Officer Devine collected the dropped items, which were six tinfoiled packets believed to contain heroin, and five small plastic bags of suspected crack cocaine. While conducting a custodial search, the officers found $120 on defendant's person. Fitzpatrick later inventoried the 11 suspected narcotics items under number 2686751.

On cross-examination, defense counsel asked several questions about the distance between the recovered narcotics, defendant, the parked car, and the officers. Fitzgerald testified the recovered drugs were four or five feet from the driver of the parked car. He also testified it was possible he lost sight of defendant and the driver of the car momentarily as he was exiting his vehicle.

Officer Devine testified regarding his observations of defendant on March 23, 2002. His account matched Officer Fitzpatrick's testimony.

The parties stipulated that Michelle Etheridge, if called as a wit-

ness, would be qualified as an expert in forensic chemistry. Etheridge would testify she tested the recovered items bearing inventory number 2686751. She concluded one of the items was 0.1 grams of heroin and five items tested positive for 1.05 grams of cocaine.

After the stipulation was entered, both the State and the defense rested. The court found defendant guilty of two counts of possession of a controlled substance.

*Case Number 01 CR 24095*

Defendant was charged with four counts of possession of a controlled substance with intent to deliver. At defendant's second trial, Officer Patrick Thelan testified he was conducting narcotics surveillance with Officer Gorman at 2909 West Flournoy Street in Chicago on August 30, 2001. At around 7 p.m., Officer Thelan observed defendant standing on a sidewalk approximately 50 to 75 feet away. With the aid of binoculars, Thelan watched an individual approach defendant and have a brief conversation. The individual then handed defendant money. Defendant walked 20 feet to a concrete block. He picked up the block, took a plastic strip from underneath the block, tore a piece off the strip, and gave the piece to the other individual, who then walked away. Officer Thelan observed this same sequence of events occur three times and believed defendant was conducting narcotics transactions.

Officer Thelan radioed his backup officers, told them about his observations, gave a physical description of defendant and instructed Officer Gorman to recover the suspected narcotics from under the concrete block. Gorman recovered the suspected crack cocaine and showed it to Officer Thelan, who described the recovered items as a plastic strip of tape connecting six small plastic bags. Each bag was tinted and contained a white rock substance. Officer Thelan later inventoried the items under number 2579357. During a custodial search, the officers discovered defendant was carrying $190.

On cross-examination, Officer Thelan testified he did not overhear any of the conversations between defendant and the three individuals who approached him. He also said he could not see exactly what the items were that defendant handed to the individuals.

Officer Gorman testified Officer Thelan radioed him to arrest defendant because Thelan suspected he was dealing drugs. Gorman approached defendant in an unmarked police car driven by Officer Parker. Gorman detained defendant and then followed Thelan's directions to recover the suspected cocaine from underneath a concrete block.

The parties stipulated that, if called, additional witnesses would

testify as follows: (1) forensic chemist Thomas Halloran would testify he weighed and tested three of the recovered items and found they were 1.2 grams of cocaine; (2) State's Attorney Investigator Golnick would testify 2909 West Flournoy is 54 feet from the Harrison Courts Public Housing at 2910 West Harrison, "part of the [Chicago Housing Authority]"; and (3) the same investigator would testify the distance between 2909 West Flournoy and the Greater Mount Zion Missionary Baptist Church at 2929 West Harrison is 414 feet.

After the stipulations were entered and the State rested its case, defense counsel moved for a directed finding of not guilty on all counts. The trial court granted the motion on two of the four counts, II and III, leaving count I for possession of a controlled substance with intent to deliver within 1,000 feet of a residential property owned, operated or managed by the Chicago Housing Authority and count IV for possession of a controlled substance with intent to deliver.

After a brief recess, the defense rested without presenting evidence. Defense counsel gave his closing argument, and the trial court found defendant not guilty on count I and guilty on count IV.

*Posttrial Hearing on August 14, 2003*

Defendant's attorney filed a posttrial motion for a new trial for the first trial (02 CR 10622). At the hearing, counsel told the court he was moving for a new trial in both cases, and the trial court heard arguments on both cases. Among other things, counsel argued there was insufficient evidence to show the recovered items were narcotics or that defendant had an intent to deliver. He said he did not present any evidence at the second trial because he wanted to preserve the issue regarding the denial of the motion for a directed finding[1] at the close of the State's case.

The trial court denied counsel's motions for a new trial. Counsel informed the court that defendant wished to file *pro se* motions alleging ineffective assistance of counsel at both trials. The trial court accepted the *pro se* motions and made the following findings:

"In regards to the motion for new trial on case 01 CR 24095 [second trial], that motion consists of 9 or 10 paragraphs alleging that there was ineffective assistance of counsel, that he was not properly prepared and the defense was not properly represented.

I disagree with that. I believe the attorney did a good job. He cross-examined each witness. He was prepared in each and every instance.

_____

[1]We use the phrase "directed finding" because defendant uses it, but we understand it would be more correctly described as a motion for judgment of acquittal at the close of the State's case.

In regards to the paragraph 9, that the attorney explained to him the possibility of an offer by the State, that is the duty of the attorney to do that.

The defendant may not like the options that he had, but the attorney has an interest to or has a duty to inform him of what the State has offered.

\* \* \*

\*\*\* I believe in that case, the defense had asked numerous times to interview a witness who was in custody. That witness had been brought to the courtroom and interviewed. Based on the attorney's strategy, that witness was not used.

Again, that is something that the attorney must do in preparing for the case and I feel like he did.

Now, going back to 02 10622 [first trial], this is also a motion for a new trial based on ineffective assistance of counsel. Again, this is an allegation of ineffective assistance of counsel, that the defendant's attorney did not ask appropriate questions.

Once again \*\*\* I felt the attorney did his job. He questioned, he cross-examined each witness in records [sic] to the stipulation. He stipulated to the proper evidence.

In regards to the time log, I'm not too sure what the defendant is looking for, but all discovery material was tendered and any additional discovery that was asked for was given.

And I believe the issues that were raised by the defense counsel were appropriate."

The court denied defendant's *pro se* motions and proceeded with sentencing. After the State and defense counsel presented aggravating and mitigating factors, the court asked defendant if he had anything to say. Defendant replied, "Your Honor, basically I think you [sic] making an error denying my motions, because it was several elements in these cases that could have been proven on physical inability just alone," and argued the police officers' testimony was incredible. He said, "They recreated the story on their own and I have no proof to offer accept [sic] what the counsel could have put together and he didn't do."

The trial court sentenced defendant to two concurrent two-year prison terms for the possession of a controlled substance charges and a consecutive eight-year term for possession of a controlled substance with intent to deliver.

On appeal, defendant contends he received ineffective assistance of counsel at his first trial because his attorney pursued an implausible defense theory and conceded defendant's guilt. Defendant contends counsel rendered ineffective assistance at the second trial because he

failed to present evidence on the mistaken belief he would waive for the purpose of appeal any issue related to his request for a directed finding. Defendant also contends the trial court failed to properly inquire into his *pro se* posttrial motions; he asks us to remand the cause to the trial court for further inquiry.

DECISION

I. Ineffective Assistance of Counsel

First, we examine defendant's ineffective assistance of counsel claims arising from both trials.

To establish ineffective assistance of trial counsel, a defendant must demonstrate that counsel's representation was objectively unreasonable and, but for the attorney's errors, there was a reasonable probability the outcome at trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068 (1984); *People v. Harre*, 263 Ill. App. 3d 447, 451, 636 N.E.2d 23 (1994). A defendant's claim must satisfy both parts of the *Strickland* test, and the failure to satisfy either part precludes a finding of ineffective assistance of counsel. *People v. Patterson*, 192 Ill. 2d 93, 107, 735 N.E.2d 616 (2000). If the defendant can show his trial counsel failed to perform any meaningful adversarial testing of the State's case, the court will presume the defendant was prejudiced. *United States v. Cronic*, 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984); see also *People v. Kozlowski*, 266 Ill. App. 3d 595, 601, 639 N.E.2d 1369 (1994) (a defendant bears a "high burden" before the court will presume prejudice). In addition, a defendant must overcome the strong presumption that counsel's challenged actions were a part of sound trial strategy and not due to incompetence. *People v. Coleman*, 183 Ill. 2d 366, 397, 701 N.E.2d 1063 (1998).

A. Defendant's First Trial—No. 02 CR 10622

■ Defendant contends his counsel rendered ineffective assistance during the first trial when he advanced the implausible defense theory of "attempt possession" and, in doing so, conceded defendant's guilt to the charge of simple possession. Defendant also contends his trial counsel's representation was deficient because he failed to subject the State's case to meaningful adversarial testing, and we should presume prejudice. See *Cronic*, 466 U.S. at 659, 80 L. Ed. 2d at 668, 104 S. Ct. at 2047; *Kozlowski*, 266 Ill. App. 3d at 600. We disagree.

Counsel's decision to argue a particular defense theory during closing argument is a matter of trial strategy. *People v. Franklin*, 135 Ill. 2d 78, 119, 552 N.E.2d 743 (1990); *People v. Daniels*, 331 Ill. App.

3d 380, 393, 770 N.E.2d 1143 (2002) (statements made during closing argument were part of counsel's trial strategy). Counsel's choice does not constitute ineffective assistance simply because it was unsuccessful. *Franklin*, 135 Ill. 2d at 119.

Defendant contends trial counsel's strategy constitutes *per se* ineffective assistance of counsel because he conceded defendant's guilt of possession and relied on a legally inapplicable "attempt" defense. We disagree. Even when counsel concedes guilt, the court will not presume prejudice unless the strategy amounted to a complete failure to subject the prosecution's case to meaningful adversarial testing. *People v. Johnson*, 128 Ill. 2d 253, 269, 538 N.E.2d 1118 (1989).

In this case, trial counsel's strategy was to attack the element of knowledge. For the State to successfully prove possession of a controlled substance, it had to show that defendant "had knowledge of the presence of the narcotics and that the narcotics were in his immediate and exclusive control." *People v. Cooper*, 337 Ill. App. 3d 106, 110, 785 N.E.2d 86 (2003). Counsel implemented his strategy throughout the case. When he cross-examined the police officers, he elicited testimony that defendant possessed the narcotics for only a few seconds after walking away from the parked car. Later in closing, counsel argued in part:

> "We don't know what it was he was trying to receive from the driver of the vehicle under that analysis and pursuant to the statute I don't think that the State would be able to show that it was knowing possession—knowing and voluntary possession long enough to establish the necessary elements of the offense, in which case it would be near attempt possession of contraband or controlled substance. We don't know what it was, but attempt."

We believe counsel's closing argument was reasonable. The record shows counsel vigorously defended the case and, using a degree of creativity, he fashioned a defense where no other was available. He argued defendant lacked knowledge of the drugs, or at most, only attempted to possess some unknown item. We believe defendant's claim of ineffective assistance of counsel at the first trial fails the *Strickland* test.

### B. Defendant's Second Trial—No. 01 CR 24095

Defendant contends he received ineffective assistance of counsel at the second trial because his attorney rested his case without presenting any evidence. Defendant contends his attorney's decision was based on a misunderstanding of the law regarding waiver.

At trial, defendant's attorney rested his case shortly after the court denied his motion for a directed finding of not guilty. During the

posttrial hearing on counsel's motion for a new trial, he argued the only reason he rested was to preserve the court's denial of the directed finding as an issue on appeal. In doing so, counsel relied on *People v. Washington*, 23 Ill. 2d 546, 548, 179 N.E.2d 635 (1962), which held, "a motion for a directed verdict made at the close of the plaintiff's case is waived when the defendant introduces evidence after the motion has been denied."

We agree with defendant that defense counsel mistakenly relied on the statement in *Washington*. The Illinois Supreme Court has since held, "an election by the defendant to present evidence after a motion for directed verdict has been overruled waives any error in the trial court's ruling on the motion [citation], *except when the defendant renews the motion at the close of all the evidence*." (Emphasis added.) *People v. Barrow*, 133 Ill. 2d 226, 249, 549 N.E.2d 240 (1989). Defense counsel did not renew the motion.

Still, there is some confusion remaining about whether the reviewing court should consider all the evidence presented at trial, including the evidence presented during the defendant's case, when reviewing the denial of a motion for a directed verdict or a motion for a directed finding at the close of the State's case. *People v. Kelley*, 338 Ill. App. 3d 273, 279-80, 788 N.E.2d 775 (2003). In *Kelley*, we said the situation is "unclear." *Kelley*, 338 Ill. App. 3d at 280.

After reviewing the transcript in this case, we are of the view that defense counsel was doing more than preserving his motion at the close of the State's case. He was making a sound strategic decision that little or nothing would be gained from offering any defense testimony. Matters of defense strategy, even those that do not work out, do not support an ineffective assistance of counsel claim. *People v. Madej*, 106 Ill. 2d 201, 214, 478 N.E.2d 392 (1985).

Defense counsel might have understood and relied on the change in standard that takes place when the defendant rests without offering any evidence. That is, a motion for a finding of not guilty at the close of the State's case in a bench trial is considered in the light most favorable to the State, but once the defendant has rested without presenting any evidence, the trial judge weighs the credibility of the State's witnesses when determining the ultimate issue of guilt. The favorable light standard no longer applies. See *People v. Connolly*, 322 Ill. App. 3d 905, 915-18, 751 N.E.2d 1219 (2001).

At any rate, mistake or not, we do not see any reasonable probability that had the defendant testified or presented some other testimony, whatever it might be, the outcome of the proceeding would have been any different. See *Barrow*, 133 Ill. 2d at 249.

Nothing in this record indicates which defense witnesses would

have testified, what they would have said, and whether defendant would have been any better off—especially given his lengthy criminal record (one prior felony conviction for possession of a controlled substance and two felony convictions for possession of a controlled substance with intent to deliver).

We conclude defense counsel's decision to rest at the close of the State's case did not fall below an objective standard of reasonableness. Thus, he did not provide ineffective assistance.

II. Trial Court's Inquiry Into Defendant's *Pro Se* Posttrial Motions

Defendant contends the trial court erred by failing to inquire about the alleged ineffective assistance of counsel claims in his *pro se* posttrial motions.

■ Typically, a trial court cannot consider *pro se* motions filed by a criminal defendant while he is represented by counsel. *People v. Rucker*, 346 Ill. App. 3d 873, 882, 803 N.E.2d 31 (2003). There is an exception to this rule: represented defendants are allowed to raise *pro se* claims of ineffective assistance of counsel so long as they include supporting facts and specific claims. *Rucker*, 346 Ill. App. 3d at 883 (defendant's bald allegation that counsel rendered inadequate representation was insufficient to meet the exception). In this case, defendant filed two detailed *pro se* motions alleging several specific errors by his attorney. We find defendant's *pro se* motions fall within the exception. We also find the court gave them adequate consideration.

Once a defendant files a sufficient *pro se* motion alleging ineffective assistance of counsel, the trial court must conduct an adequate inquiry into the factual basis for the defendant's claim. *People v. Moore*, 207 Ill. 2d 68, 78, 797 N.E.2d 631 (2003). If the defendant's claim is without merit or raises only matters of trial strategy, the court may deny the *pro se* motion without appointing new counsel. *Moore*, 207 Ill. 2d at 78. The supreme court listed three ways a trial court can conduct its evaluation: (1) the court may ask trial counsel about the facts and circumstances related to the defendant's allegations; (2) the court may ask the defendant for more specific information; or (3) the court may rely on its knowledge of counsel's performance at trial and "the insufficiency of the defendant's allegations on their face." *Moore*, 207 Ill. 2d at 79.

This case is easily distinguished from *Moore*, where the supreme court found the trial court's inquiry into the defendant's *pro se* motions was inadequate. In *Moore*, the trial court did not consider the defendant's *pro se* motion at all. The motion never was denied; instead, the court simply allowed it into the record, so it could be considered later on appeal. *Moore*, 207 Ill. 2d at 79.

Here, the court carefully reviewed the defendant's motions. The trial judge ordered the trial transcript and reviewed it before he ruled. Although the judge denied the motions, he did not brush them off; he simply had nothing left to ask defendant or his attorney. Based on the specific facts and claims in defendant's motions, the court concluded the alleged errors were matters of trial strategy or could be disposed of based upon the trial judge's knowledge of what occurred at trial.

Defendant contends the trial judge did not have the necessary information to deny defendant's motion because the trial judge said he "did not know what defendant was looking for" with respect to the "time log." In defendant's motion, defendant stated he wanted the arrest time log from the police station to show "inappropriate police procedure" and that he was arrested to meet the officer's "quota." Reviewing the court's comments in light of defendant's allegations, we conclude the trial judge knew what defendant wanted but did not see how it would help his case.

In addition, defendant had the opportunity to raise any additional facts to support his motions during sentencing, which was conducted at the same hearing. The court allowed defendant to speak, and although defendant chose to talk about his motions, he did not present any specific facts to support his allegations. Instead, he focused on attacking the police officers' credibility.

We believe the trial court's consideration of defendant's *pro se* posttrial motions was adequate. Given the specific allegations in defendant's motions, further questioning of defendant and his attorney was unnecessary.

## CONCLUSION

Based on our review, we conclude defendant's claims of ineffective assistance of counsel should fail. We also believe the trial court conducted a proper inquiry of defendant's *pro se* posttrial motions.

We affirm defendant's convictions and sentences.

Affirmed.

BURKE, P.J., and GARCIA, J., concur.